

1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,    :   15-MC-2195(RD)
                             :
                             :
     -against-               :   United States Courthouse
                             :   Brooklyn, New York
                             :
                             :   Monday, November 23, 2015
JEFFREY WEBB,                :
                             :
          Defendant.         :
- - - - - - - - - - - - - X

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

          S E A L E D     P R O C E E D I N G S

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

                 TRANSCRIPT OF CRIMINAL CAUSE FOR PLEA
                  BEFORE THE HONORABLE RAYMOND DEARIE
                UNITED STATES SENIOR DISTRICT COURT JUDGE

2

A P P E A R A N C E S :

For the Government: ROBERT L. CAPERS, ESQ.
                   United States Attorney
                   Eastern District of New York
                   271 Cadman Plaza East
                   Brooklyn, New York 11201
              BY:  AMANDA HECTOR, ESQ.
                   EVAN NORRIS, ESQ.
                   Assistant United States Attorneys

 For the Defendant:    CLIFFORD CHANCE US LLP
                       31 West 52nd STREET
                       New York, New York  10019
                  BY: EDWARD C. O'CALLAGHAN, ESQ.
                      ERNIE GAO, ESQ.

Court Reporter:  Richard W. Barry, RPR
                 Official Court Reporter
                 E-mail: rwbarrycourtreporter@gmail.com

         Proceedings recorded by computerized stenography.
         Transcript produced by Computer-aided Transcription.

            - - o o O o o - -

         COURTROOM DEPUTY:  We are on this morning, we have

Mr. Webb here.

         THE DEFENDANT:  Yes.

         COURTROOM DEPUTY:  We are on this morning for a

pleading, this is 15-CR-252, United States versus Jeffery

Webb.

         Can I ask the attorneys please to note their

appearances, starting with counsel for the Government.

         MS. HECTOR:  Amanda Hector and Evan Norris for the

- SEALED PLEA -                                          3

1    Government.

2            MR. O'CALLAGHAN:  Ed O'Callaghan and Ernie Gao for

3    the defendant, Mr. Webb.

4            THE COURT:  Good morning.

5            Mr. Webb, good morning.

6            THE DEFENDANT:  Morning Your Honor.

7            THE COURT:  I take it you are ready to proceed?

8            MS. HECTOR:  We are.

9            MR. O'CALLAGHAN:  Yes, Your Honor.

10           THE COURT:  I will note for the record that a few

11   minutes ago, I heard the Government's application to seal this

12   proceeding and granted the request of relief, having made

13   certain findings consistent with the Alcantara directive.

14           I was informed by Mr. Gatto, the Assistant United

15   States Attorney at the time, Mr. O'Callaghan, that you and

16   your client waived your presence for obvious reasons.

17           Would you just confirm that on the record.

18           MR. O'CALLAGHAN:  I so confirm, Your Honor, thank

19   you.

20           THE COURT:  And we are otherwise ready to proceed

21   with the plea?

22           MS. HECTOR:  If I may, Your Honor, I believe there

23   was also an order with respect to the closed courtroom that

24   was provided to Your Honor.

25           THE COURT:  Thank you very much.

```
                        - SEALED PLEA -                    4
```

1          MS. HECTOR:  To be entered.

2          THE COURT:  I have it in front of me.  The order has

3    been signed.

4          MS. HECTOR:  Thank you, Your Honor.

5          COURTROOM DEPUTY:  Do you have an indictment?

6          THE COURT:  Would it be fair to say, that there has

7    been an allocution prepared, Mr. O'Callaghan?

8          MR. O'CALLAGHAN:  Yes, there is.

9          THE COURT:  In a narrative form, so to speak.

10          MR. O'CALLAGHAN:  That's correct.

11          THE COURT:  Touching at one time on all of the

12    relevant counts.

13          MR. O'CALLAGHAN:  The relevant counts, the element

14    of each counts, yes.

15          THE COURT:  Swear in the defendant.

16    JEFFREY  WEBB, having been first duly sworn, testified as

17    follows:

18          THE COURT:  Mr. Webb, before we get started, I

19    should tell you, there are a number of questions I have to ask

20    you.  Perhaps it would be easier for everyone if you came up

21    to the podium.

22          If there is anything that I say or any question that

23    I ask that is not entirely clear to you, don't hesitate to say

24    so.  If you wish at any time, to confer with counsel, ask me

25    and I will rest assured, I will give you whatever time you

1   need to confer privately with your attorney.  All right.

2          THE DEFENDANT:  Thank you, Judge.

3          THE COURT:  You are now under oath.  That means that

4   your answers to my questions, must be truthful.  If they were

5   not in any material way, you could subject yourself to

6   additional charges for the offense of perjury, which is lying

7   while under oath.

8          Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Would you please state your full name.

11         THE DEFENDANT:  Jeffery Dione Webb.

12         THE COURT:  How old are you, sir?

13         THE DEFENDANT:  51.

14         THE COURT:  What schooling or formal education have

15   you had?

16         THE DEFENDANT:  High school, King High School in

17   Tampa, Florida and attended Hillsborough Community College in

18   Tampa, Florida.

19         THE COURT:  Tell me about your health, how is your

20   health?

21         THE DEFENDANT:  Beside heart disease, heart

22   condition, health is fine.

23         THE COURT:  It is a big besides.

24         THE DEFENDANT:  Yes.

25         THE COURT:  Are you taking any medication?

- SEALED PLEA -                                          6

1          THE DEFENDANT:  Yes.

2          THE COURT:  Daily medication?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Can you tell me what that is.

5          THE DEFENDANT:  I take Plavix and Metoprolol.

6          THE COURT:  Do you have any side effects as you

7   stand there now?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Are you comfortable?

10          THE DEFENDANT:  Yes.

11          THE COURT:  You can concentrate on what I'm saying,

12   sir?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Have you had any problems with alcohol

15   or drugs or anything of that sort?

16          THE DEFENDANT:  No.

17          THE COURT:  In the past 24 hours, I take it you have

18   taken your daily medication.

19          THE DEFENDANT:  Yes, I have.

20          THE COURT:  Your mind is clear this morning or this

21   afternoon, I should say.

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Mr. O'Callaghan, in your discussions

24   with your client, have you at any time had difficulty

25   communicating with him?

1          MR. O'CALLAGHAN:  No, Your Honor.

2          THE COURT:  Are you satisfied that he understands

3     the rights he will be waiving?

4          MR. O'CALLAGHAN:  Yes, Judge.

5          THE COURT:  Is he in your judgment competent to

6     proceed?

7          MR. O'CALLAGHAN:  Yes, Judge.

8          THE COURT:  Now, as we get started, the whole series

9     of questions I have to put to you, which are in the first, are

10    designed to lay out as a matter of record the rights you have

11    Mr. Webb, and the rights that you will be giving up by

12    offering a plea of guilty.

13         Do you understand?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:   For example, you have an absolute right

16    to continue in your plea of not guilty.

17         Do you understand that?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  Even if you are guilty, you have the

20    right to plead not guilty, and put the Government to the

21    burden of proving your guilt to the satisfaction of a jury,

22    beyond a reasonable doubt.

23         Do you understand that?

24         THE DEFENDANT:  Yes, I do, Your Honor.

25         THE COURT:  Under our constitution and laws, you are

- SEALED PLEA -                                        8

1   entitled to a speedy and public trail by jury, with the

2   assistance of counsel on the charges reflected in the

3   indictment.

4          Do you understand?

5          THE DEFENDANT:  Yes, I do, Your Honor.

6          THE COURT:  At trial, you would be presumed innocent

7   of the charges, I would tell the jury that in no uncertain

8   terms.

9          Do you understand that?

10         THE DEFENDANT:  Yes, I do.

11         THE COURT:  The Government would have to overcome or

12  attempt to overcome this presumption of innocence, and prove

13  your guilt beyond a reasonable doubt by competent evidence

14  subject to the Court's approval.

15         Do you understand?

16         THE DEFENDANT:  Yes, I do.

17         THE COURT:  In the course of the trial-- that means

18  of course, I should say, if the Government were to fail for

19  any reasons, technical or otherwise, the jury would be

20  required under my instructions to find you not guilty even if

21  you committed one or more of these charges.

22         Do you understand?

23         THE DEFENDANT:  Yes, I do, Your Honor.

24         THE COURT:  In the course of the trial, witnesses

25  for the Government would be required obviously to come to

1  Court and testify under oath in your presence, presence of

2  counsel.  You would have the right therefore, to confront each

3  of these witnesses face-to-face here in court.

4          Do you understand that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  You would have the right to cross

7  examine, for counsel to cross examine each witness, and if

8  appropriate, to object to evidence offered by the Government.

9          Do you understand?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  You would have the right to offer

12  evidence in your own defense and in that regard, you would

13  have the right to compel the attendance of witnesses through

14  the use of Court Order or subpoena.

15          Do you understand?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  At trial, you would have the right to

18  testify in your own defense.

19          Do you understand that?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  You also enjoy an absolute

22  constitutional right or privilege to not testify, to remain

23  silent.  No one can make you testify, not your lawyer, the

24  Government's lawyer or the Court.  You have an absolute and

25  constitutional privilege to remain silent.  If you choose to

1    avail yourself of that privilege, I would instruct the jury in

2    no uncertain terms that they could not in any way hold your

3    decision against you.

4              Do you understand that?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  Now, having said all of that, if you

7    plead guilty and I accept your plea, you give up those rights.

8    No trial, none of these rights that I have just outlined for

9    you.

10             Do you understand?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  You give them up for all time.  Do you

13   follow?

14             THE DEFENDANT:  Yes.

15             THE COURT:  With the possible exception of sentence,

16   which I will get to in a moment, there is no right to an

17   appeal.  I would simply enter a judgement of guilty based upon

18   what you tell me, based upon your plea of guilty.

19             Do you follow?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Finally, before I can actually accept

22   your plea, I am required by law to satisfy myself that you are

23   in fact guilty of the charges that are the subject of this

24   proceeding.

25             To do that, I will ask you a few questions in a few

- SEALED PLEA -                                        11

1    minutes about the charges.  In responding to my questions,

2    obviously you will give up your right to remain silent.  You

3    will give up your constitutional right not to incriminate

4    yourself and you will be called upon to acknowledge your guilt

5    here on the record.

6              Do you understand that?

7              THE DEFENDANT:  Yes, I do, Your Honor.

8              THE COURT:  So then, you have had adequate time to

9    discuss this choice with counsel?

10             THE DEFENDANT:  Yes, I have.

11             THE COURT:  You are satisfied this is in your best

12   interests?

13             THE DEFENDANT:  Yes, I do, Your Honor.

14             THE COURT:  You are willing to give up your right to

15   a trial and these other rights I have just discussed.

16             THE DEFENDANT:  Yes, I do, Your Honor.

17             THE COURT:  Now, I have a document here.

18             Do you have the original?

19             COURTROOM DEPUTY:  The original plea agreement, I

20   had just placed it in front of Mr. --

21             THE COURT:  Has it been signed?

22             COURTROOM DEPUTY:  Yes.

23             THE COURT:  Mark the original as Court Exhibit 2.

24             COURTROOM DEPUTY:  Certainly.

25             (So marked.)

- SEALED PLEA -                                              12

1
2

3        MS. HECTOR:  Your Honor, if I may.

4        I might have missed it, but I believe Your Honor

5   touched upon it, but I want to make sure that the defendant

6   understands that he would have a right to counsel, appointed

7   if necessary, if he could not afford an attorney to represent

8   him in every stage of the criminal process.

9        THE COURT:  You didn't miss it, because I didn't say

10  it, but you are absolutely right.

11       If for any reason Mr. Webb at any point in the

12  proceedings, you are unable to afford counsel, you may apply

13  to the Court for appointment of counsel, in which case fees

14  and expenses associated with your defense would be paid by the

15  Government under the authority of the Criminal Justice Act.

16       Do you understand?

17       THE DEFENDANT:  Yes, I do, Your Honor, thank you.

18       THE COURT:  I have now before me a document,

19  typewritten document containing 21 typewritten pages, with

20  exhibits attached and the caption of this case,

21

22       I take it Mr. Webb, you have read this document.

23       THE DEFENDANT:  Yes, I did, Your Honor.

24       THE COURT:  You read it carefully?

25       THE DEFENDANT:  Yes, I have.

- SEALED PLEA -                                    13

1          THE COURT:  You reviewed it carefully with counsel?

2          THE DEFENDANT:  Yes, we have.

3          THE COURT:  You feel that you understand everything

4  that is in the agreement?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  Any questions that you would like to put

7  to me about anything in the agreement?

8          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  Are there any other understandings or

15  agreements that you have arrived at that are not written down

16  in the agreement?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  As far as you know.

19          THE DEFENDANT:  No, Your Honor.



RB          OCR

- SEALED PLEA -                                    15

```
 1
 2          THE COURT:  Does that summarize it, Mr. O'Callaghan?
 3          MR. O'CALLAGHAN:  It does, Your Honor.
 4
 5
 6
 7
 8          THE COURT:  Okay.  I appreciate that.
 9          All right.  I think you have signed the agreement in
10   the presence of counsel Mr. Webb?
11          THE DEFENDANT:  Yes, I have, Your Honor.
12          THE COURT:  We will get back to this in just a few
13   moments.
14          I take it counsel you waive reading of the charges?
15          MR. O'CALLAGHAN:  Yes, Your Honor.
16          THE COURT:  Let me go back to this one second.
17          There are any number of terms and provisions in this
18   agreement, need less to say, I'm not going to review them all.
19   You have assured me, Mr. Webb that you have with counsel.  You
20   have declined my invitation to put any questions to me,
21   probably a prudent decision.
22
23
24
25
```



RB        OCR

- SEALED PLEA -                                          16



- SEALED PLEA -                                    17

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  I will dispense with the charges.

3          You have discussed with counsel, each of the

4    charges?

5          THE DEFENDANT:  Yes, I did Your Honor.

6          THE COURT:  You are fully confident, you understand

7    what you are charged with in each of the counts?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Fair to say?

10         THE DEFENDANT:  Yes.

11         THE COURT:  I take it Count One is a conspiracy

12    count.

13         MS. HECTOR:  Yes, Your Honor, racketeering

14    conspiracy.

15         THE COURT:  Among other things, you are charged with

16    conspiracy.  What is your understanding Mr. Webb, what is a

17    conspiracy?

18         THE DEFENDANT:  Conspiracy, Your Honor, is an

19    agreement amongst a group of individuals to carry out an

20    illegal act.

21         THE COURT:  A plus.  It is the agreement itself.

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Regardless of whether you do anything

24    about it.  If you in good faith, poor choice of words, if you

25    intentionally agree with another person to commit a crime,

1  okay, it is that agreement that constitutes the crime alleged

2  in Count One or for that matter any conspiracy alleged in the

3  indictment.

4          Do you understand that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  Now, let me return to your plea

7  agreement and discuss as I am required to, important

8  information relative to sentencing.

9          Laid out in the initial portions of the agreement

10 are the statutory penalties, you will see them there under

11 paragraph one that you face, as a result of your conviction on

12 these various counts.  All right.  Pages one, two, three, and

13 onto page four.

14         You have reviewed them I take it, needless to say

15 with counsel, fair enough?

16         THE DEFENDANT:  Yes, I have, Your Honor.

17         THE COURT:  For example under Count One, you face a

18 maximum term of 20 years in prison.  You face a period of up

19 to three years supervised release, if sentenced to a period of

20 custody.  Supervised release Mr. Webb is a period of

21 supervision that begins to run the moment you are released

22 from federal custody.  If you were to violate the terms or

23 conditions of your supervised release at any time during the

24 period of supervision, you could under the terms of any

25 sentence in this case, be returned to prison, for up to

- SEALED PLEA -                                      19

1    two years, without any credit being given to you for the time

2    you have spent at liberty under supervision.

3           Do you follow?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  You face a fine of, again, with respect

6    to Count One, of up to $250,000 or twice the gross profits of

7    the enterprise which could be a sizable sum of money no doubt.

8           Restitution is mandatory in the case.  I'm not sure

9    what the Government's thoughts are on that.  But I have

10   little, if any, discretion with respect to restitution.  It is

11   a subject matter that we will have to address at or prior to

12   the time of sentencing.  But you will be required to make

13   restitution.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  For each count of conviction I impose

17   what is called a special assessment.  For each count it is in

18   the amount of $100. There are criminal forfeitures which I--

19   which you no doubt are aware of by virtue of your agreement,

20   correct?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  And, the penalty of removal, that is a

23   fancy word for-- not a fancy word, but a different word for

24   deportation.  Following the custodial portion of your sentence

25   you could be removed from the United States.

- SEALED PLEA -                                    20

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  It is not a decision I make.  It is a

4   decision made by other authorities, immigration folks.  But, I

5   bring it to your attention because it is a likely consequence

6   of your conviction.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  That is Count One, Counts 25, you will

10  see on page two, 25, 33, and 39, are similar penalties, up to

11  20 years; again up to three years of supervised release, the

12  same fine.  All these penalties could be legally, could be

13  piled one on top of the other and imposed consecutively.

14         Do you understand that?

15         THE DEFENDANT:  Yes, I do, Your Honor.

16         THE COURT:  Counts 29, 37 and 40.  Again, similar

17  provisions, there the fine is a greater, $500,000 or twice the

18  value of the monetary instrument or funds involved with

19  respect to each of those three counts.

20         Again restitution, special assessment and so forth.

21         Now, those are the kind of statutory penalties that

22  you face.  The worst case, if you will.

23         There is also as you undoubtedly know in the federal

24  system what we call, sentencing guidelines.  These guidelines

25  address where within this rather broad range of sentencing,

- SEALED PLEA -                                    21

1   you will be sentenced. ██████████████████████

2   ████████████████████████████████████████████

3   ████████████████████████████████████████████

4   ████████████████████████████████████████████

5   ████████████████████████████████████████████

6   ████████████████████████████████████████████

7   ████████████████████████████████████████████

8   ████████████████████████████████████████████

9           Have you discussed at all among yourselves with

10  counsel, the likely calculation of a guidelines advisory

11  guideline range?

12          MS. HECTOR:  We have not discussed a particular

13  calculation, but I believe that defense counsel is aware of

14  the underlining facts that would go into such a calculation.

15          THE COURT:  I have no doubt he is aware of it.

16  Needless to say, this advisory guidelines range, given the

17  fact scope of this, consecutive case, could be quite sizable.

18  Okay.

19          I am not required to sentence you within that range.

20  I am however required as a first step in the sentencing

21  process to consider the advisory guidelines range.

22          I then am required to consider, as I say, the

23  statutory factors about you personally, about the case in

24  particular, about other values that go into the judgment or

25  sentencing process, and any other information that your

- SEALED PLEA -                                      22

1   attorney or the government's attorney bring to my attention

2   prior to sentencing.

3            Ultimately, what the law requires of me is, that I

4   impose under all of these circumstances, a reasonable

5   sentence.

6            THE DEFENDANT:  Okay.

7            THE COURT:  And at the end of the day, Mr. Webb, if

8   you think that I have imposed an unreasonable sentence, you

9   may seek review of that sentence at a higher court.  Okay.

10           THE DEFENDANT:  Okay.

11           THE COURT:  If at that time, you can no longer

12  afford the fees and expenses associated with counsel, once

13  again, those fees and expenses will be paid by the Court upon

14  appropriate application under the authority of the Criminal

15  Justice Act.

16           Do you understand?

17           THE DEFENDANT:  Yes.

18           THE COURT:  The Government is an equal partner,

19  equal participant I should say, in the sentencing process.  So

20  if they feel that I have imposed an unreasonable sentence on

21  the lenient side perhaps or whatever the case maybe, they too

22  have an opportunity to seek review of the sentence and should

23  that happen, your interests in that proceeding will of course

24  be represented by counsel of your choosing or counsel

25  appointed by the Court, if indeed you are eligible for that

1    relief.

2              Do you understand that?

3         THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  Are there any other aspects to this

5    rather lengthy agreement that I should focus on more

6    specifically?

7              MS. HECTOR:  No, Your Honor.  I believe that is

8    sufficient.

9         THE COURT:  Mr. O'Callaghan, are you confident that

10   Mr. Webb understands all these features as he has assured me?

11            MR. O'CALLAGHAN:  Yes, Your Honor.

12            THE COURT:  All right.  Then Mr. Webb, are we ready

13   to plead?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  Mr. O'Callaghan, do you know of any

16   reason why Mr. Webb should not plead guilty?

17            MR. O'CALLAGHAN:  No, Your Honor.

18            THE COURT:  Are you aware of any legal defense to

19   the charges?

20            MR. O'CALLAGHAN:  No, Your Honor.

21            THE COURT:  Mr. O'Callaghan, with respect to -- I

22   will take them one at a time if you don't mind.

23            With respect to Count One, what is your plea, guilty

24   or not guilty?

25            THE DEFENDANT:  Guilty, Your Honor.

- SEALED PLEA -                                24

1          THE COURT:  Count 25?

2          THE DEFENDANT:  Guilty, Your Honor.

3          THE COURT:  Count 29?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  Count 33?

6          THE DEFENDANT:  Guilty.

7          THE COURT:  Count 37?

8          THE DEFENDANT:  Guilty, Your Honor.

9          THE COURT:  Count 39?

10         THE DEFENDANT:  Guilty, Your Honor.

11         THE COURT:  Count 40?

12         THE DEFENDANT:  Guilty, Your Honor.

13         THE COURT:  You are making these pleas of guilty

14  voluntarily of your own free will?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Anybody forced you to plead guilty?

17         THE DEFENDANT:  No, Your Honor.

18         THE COURT:  Other than the agreement that we have

19  discussed, Court Exhibit 2, any other agreements,

20  understandings, no matter how slight, that I should be aware

21  of before accepting these pleas?  Relative to sentence?  Any

22  agreement at all?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  So tell me what you did.

25         THE DEFENDANT:  Your Honor, respect to Count One, in

- SEALED PLEA -                                              25

1   1991, I became president of the Cayman Island Football

2   Association which is a member of the Caribbean Football Union.

3   CFU, which in turn is a constituent organization of CONCACAF,

4   the Football Confederation that represents North America,

5   Central America and Caribbean before FIFA, the world governing

6   body of football.

7              And the year since then, I attained high level

8   positions within these football organization bodies, first at

9   the CFU, then later at CONCACAF and FIFA.

10             I was elected president of CONCACAF in May of 2012

11  and also served as a vice president of FIFA executive

12  committee from May of 2012.

13             For most of this time CONCACAF had its headquarters

14  here in New York, CONCACAF moved their headquarters to Miami

15  soon after I became president.

16             FIFA, CONCACAF, CFU and FIFA as well as other soccer

17  related organizations were engaged in promoting and regulating

18  the sport of football, worldwide as part of an ongoing

19  organization.  The activities of that organization -- sorry.

20  The activities of that ongoing organization, effected both

21  interstate and foreign commerce.

22             While I held the position of CIFA president, and

23  then CONCACAF president, I abused my position to personally

24  enrich myself, through various means.  For example, upon

25  attaining these leadership positions, I began to exercise

- SEALED PLEA -                                    26

1  significant influence over the awarding of commercial rights

2  associated with football tournaments, organized by CONCACAF or

3  CFU.

4         In this capacity, I abused my position to obtain

5  bribes and kickbacks for my personal benefit.  Among other

6  things, I agreed to commit at least two counts of racketeering

7  activity, together with other coconspirators to accept bribes

8  from sports marketing companies, to favor them when awarding

9  sponsorship and media rights for football tournaments.

10        For example, in or about 2012, a coconspirator told

11  me that sports marketing companies would offer us side

12  payments in exchange for awarding them commercial rights to

13  World Cup qualify matches for the CFU nations.  At the time I

14  understood this to be a bribe offer, and I believed that such

15  offers were common in this business.

16        Because I wanted to enrich myself, I agreed to

17  receive, and share bribes with coconspirators, in connection

18  with the sale of commercial rights for the 2018 and 2022 World

19  Cup qualifying matches from the CFU member associations.

20        Later in 2012, and 2013, I agreed with

21  coconspirators to accept bribes in connection with the sale of

22  commercial rights to the Gold Cup, and champion league,

23  CONCACAF Club Tournament.

24        Then in 2013, and 2014, I agreed with

25  coconspirators, that we would accept bribes in connection with

1  the sale of commercial rights to the Copa America Centenario

2  tournament, which is a special centennial edition of the

3  tournament that would be hosted in the United States.

4       I also abused my position of trust, and otherwise

5  including among others, by embezzling funds intended for the

6  benefit of football organizations that I represented and by

7  soliciting and accepting bribes and kickbacks related to other

8  agreements between for example, CONCACAF and third party

9  vendors, for services and equipment.

10       I understood at the time that it was unlawful to

11  accept bribes and embezzle funds in connection with my duties

12  as a high level official of FIFA, CONCACAF or CFU.  I deeply

13  regret my participation in this illegal conduct.

14       MR. O'CALLAGHAN:  Your Honor, there are additional

15  counts that Mr. Webb is prepared to allocute to the elements

16  of.

17       THE COURT:  Yes.

18       MR. O'CALLAGHAN:  And grouped them with the wire

19  fraud conspiracy counts.  Then the money laundering counts.

20       So Mr. Webb is prepared to continue with those so

21  the next would be with respect to Counts 25, 33, and 39.

22       THE COURT:  All right.  Please.

23       THE DEFENDANT:  Thank you, Your Honor.

24       With respect to my participation in the bribery

25  schemes related to the three football tournaments that I just

- SEALED PLEA -                                                28

1    referred, I also knowingly disregarded my duties to FIFA,

2    CONCACAF and CFU, as a high official in each of these

3    organizations, by conspiring to defraud them under

4    constituents of their right to be honest service, even though

5    I knew, it was unlawful to do so.

6           For example, in or about and between 2012 and 2014,

7    I agreed to participate in schemes to defraud these

8    organizations, and their constituents by accepting undisclosed

9    bribes from sports marketing companies to secretly play favor,

10   these companies when awarding commercial rights for the

11   football tournaments that I mentioned before.

12          In or about and between 2012, and 2014, I also

13   agreed with my coconspirators, that we would use wire

14   transfers, E-mails and telephone calls, all in interstate and

15   foreign commerce, to further these unlawful schemes to

16   defraud.  I knew at the time I participated in these schemes,

17   that the funds obtained by these wire transfers were unlawful

18   proceeds of bribes and sports marketing companies.

19          MR. O'CALLAGHAN:  Your Honor, the last group of

20   offenses are the conspiracy to commit money laundering

21   offenses charged in Counts 29, 37, and 40.

22          THE COURT:  All right.

23          THE DEFENDANT:  Finally, from in or about 2012 to

24   2014, in connection with the bribery schemes I just referred,

25   I and others agreed to and did transmit funds by wire

- SEALED PLEA -                                          29

1   transfer, or other means from within the United States to bank

2   accounts located outside of the United States, knowing that

3   the purpose of these transfers was to promote and conceal my

4   receipt of these funds, that I knew to be unlawful proceeds of

5   bribes from sports marketing companies.

6           For example, to facilitate the payments and

7   concealment of the nature of these funds, I agreed with my

8   coconspirators, that they would make wire transfer of these

9   funds from the United States to bank accounts located in

10  Panama, the Cayman Islands and elsewhere, that were owned by

11  front companies.

12          THE COURT:  Purporting to be payments in the normal

13  course?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  How about the subject of venue?

16          MS. HECTOR:  Your Honor, yes, venue is in the

17  Eastern District of New York for each of these charges.  If

18  called upon to do so, the Government would prove at trial,

19  that the venue lies in the Eastern District of New York for

20  each of these charges.

21          My understanding, the defendant is prepared to

22  stipulate to that fact on the record.

23          MR. O'CALLAGHAN:  We are so prepared to stipulate,

24  Your Honor.

25          THE DEFENDANT:  Yes, Your Honor.

- SEALED PLEA -                                                30

1          THE COURT:  Any questions Mr. Webb before we

2   conclude these proceedings?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Would you like to confer with counsel

5   before we conclude these proceedings?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Anything further, Mr. O'Callaghan?

8          MR. O'CALLAGHAN:  We do have a couple of further

9   points.

10         MS. HECTOR:  If I can do one thing.

11         If I can do one thing initially.  I believe if the

12  defendant could represent that he is satisfied with counsel up

13  to this point.

14         THE COURT:  Up to this point?  Mr. Webb?  So far so

15  good?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Mr. O'Callaghan.

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  That is comforting.

20         MR. O'CALLAGHAN:  Thank you, Your Honor.

21         MS. HECTOR:  Your Honor, there is a preliminary

22  order of forfeiture.

23         THE COURT:  All right.  Counsel has seen this, I

24  assume.  Consistent with the agreement, with no objection if I

25  sign it?

1    MR. O'CALLAGHAN:  No, Your Honor.

2    MS. HECTOR:  No.

3    THE COURT:  Anything else?







THE COURT:  Any questions Mr. Webb?

THE DEFENDANT:  No, Your Honor.

THE COURT:  I notice the Assistant giving the Reporter terms and conditions.  This is a sealed proceeding and I will seal the record of this proceeding, any notes and so forth, with the understanding that counsel for Mr. Webb, the United States Attorney's office can be provided copies. In consideration of that, I would urge you, at your earliest moment collectively to review the transcript of this

- SEALED PLEA -                    34

1  proceeding so it is precise, it is not the easiest subject

2  matter to take down with all the acronyms and so forth.

3         MR. O'CALLAGHAN:  Your Honor, there are a couple of

4  bail modifications that I have agreed with the Government, I

5  would propose for Your Honor's consideration.

6         One is now Mr. Webb has accepted responsibility by

7  pleading guilty, the Government has agreed that the security

8  detail is no longer a necessary requirement of the bond.  He

9  is on GPS electronic monitoring, and the coordination between

10 the Northern District of Georgia and Eastern District of New

11 York Pretrial Services with respect to that has actually gone

12 seamlessly so far as I can tell Your Honor.

13        So we would make that request that the security

14 detail be removed as of this proceeding.

15        THE COURT:  Confirm that?

16        MS. HECTOR:  Yes, Your Honor.

17        THE COURT:  Anything else?

18        MR. O'CALLAGHAN:  Your Honor, the next one is that

19 Mr. Webb is at home.  Thankfully his wife has been able to get

20 a job.  She is a practicing physician in the Atlanta area, but

21 that means Mr. Webb now is responsible for the-- solely

22 responsible for the care of their child, 18 month old child.

23        THE COURT:  He is a busy man.

24        MR. O'CALLAGHAN:  Necessitating Your Honor, some

25 errands during the course of the day.  So, with the

RB          OCR

- SEALED PLEA -                                        35

1   Government's agreement, we would propose that Mr. Webb be

2   allowed to leave his home from 8:00 a.m. to 5:00 p.m., for the

3   purpose of running errands related to the care of his 18-month

4   old son.

5            THE COURT:  Don't abuse that privilege.

6            MS. HECTOR:  And Your Honor, I think it is probably

7   simplest to indicate, and I believe we have an agreement on

8   this, the modification would actually allow Mr. Webb to be out

9   of the house, within a 20-mile radius of his home between

10  8:00 a.m. and 5:00 p.m., those seven days per week.

11           THE COURT:  All right.  Fair enough.

12           MS. HECTOR:

13

14

15

16

17

18

19           I will also note that I have spoken to the defense

20  counsel who represented to me, and I'm sure can represent to

21  the Court, that he spoke to the other suretors on the bond,

22  and that they are comfortable remaining on the bond even in

23  light of those changes.

24           THE COURT:  You can confirm that Mr. O'Callaghan.

25           MR. O'CALLAGHAN:  I can, Your Honor.  I can add that

RB        OCR



1   I have actually, one additional piece, just to cover.

2           There were certain assets that were also used

3   originally to secure the bond.  Those assets, some of which

4   are now subject to either the forfeited assets provisions of

5   the agreement or the liquidated assets portion of the

6   agreement, once those transfer over, you know, they are -- no

7   longer appropriately considered as bond security.  We have

8   discussed that, myself and my colleagues have discussed that

9   with each of the cosigners and all have expressed no objection

10  to those modifications and have agreed to remain as cosigners.

11          THE COURT:  All right.

12          Anything else?

13          MS. HECTOR:  I think the only thing left Your Honor,

14  is for Your Honor to indicate that you accept the plea.

15          THE COURT:  I'm about to do just that.

16          Anything else?

17          MR. O'CALLAGHAN:  Nothing from the defense.

18          MS. HECTOR:  No.

19          THE COURT:  Based on the information given to me, I

20  find that the defendant is acting voluntarily, and he fully

21  understands his rights, the consequences and possible

22  consequences of his pleas, and that there are factual basis

23  for the pleas of guilty.

24          I therefore accept the pleas of guilty to Counts 1,

25  25, 29, 33, 37, 39, and 40 of indictment, number bearing

- SEALED PLEA -                                             37

1   docket number 15-CR-252.

2          Anything else?

3          MS. HECTOR:  No, Your Honor.

4          MR. O'CALLAGHAN:  No.

5          COURTROOM DEPUTY:  Just to make clear, as far as Mr.

6   Webb to leave from 8:00 a.m. to 5:00 p.m., he is on the

7   electronic bracelet,

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25         COURTROOM DEPUTY:  Judge Dearie, I will set this

- SEALED PLEA -                                                38

1   down as a control date, June 3rd, at 10:00 a.m..

2          THE COURT:  With that, we will wish you a good day.

3   See you next time.

4          COURTROOM DEPUTY:  I am returning the original

5   agreement back to the Government.


7          - - o o O o o - -

8

9   I CERTIFY that the foregoing
    is a correct transcript from
10  the record of proceedings
    in the above entitled matter.
11

12  s/Richard W. Barry
    _____
13  Richard W. Barry, RPR

14

15

16

17

18

19

20

21

22

23

24

25