1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    -------------------------------------x
     UNITED STATES OF AMERICA
3                                          15 CR 252(RML)
               versus
4                                          U.S. Courthouse
     ALEJANDRO BURZACO,                    225 Cadman Plaza East
5                                          Brooklyn, NY 11201
                         Defendant.        November 16th, 2015
6    -------------------------------------x

7         SEALED TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
                  BEFORE THE HONORABLE ROBERT LEVY
8               UNITED STATES MAGISTRATE JUDGE

9                          APPEARANCES

10   For the Government:    ROBERT CAPERS
                            UNITED STATES ATTORNEY
11                          EASTERN DISTRICT OF NEW YORK
                            271 Cadman Plaza East
12                          Brooklyn, New York 11201
                            BY: SAMUEL NITZE, ESQ.
13                              EVAN NORRIS, ESQ.
                                TANYA HAJJAR, ESQ.
14                          Assistant United States Attorneys

15   For the Defendant:     KOBRE & KIM, LLP
                            800 Third Avenue
16                          Brooklyn, New York 10022
                            BY:  SEAN CASEY,ESQ.
17
                            KOBRE & KIM, LLP
18                          2 South Biscayne Boulevard, 35th Floor
                            Miami, Florida 33131
19                          BY:  JOHN COURIEL, ESQ.

20

21   Court Reporter:        LISA SCHMID, CCR, RMR
                            Official Court Reporter
22                          225 Cadman Plaza East
                            Brooklyn, New York 11201
23                          Phone:  718-613-2644
                            Fax:  718-613-2379
24
     Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.

```
 1              MR. CASEY:  Hi, Your Honor.

 2              THE COURT:  Did you need an interpreter?

 3              THE DEFENDANT:  No.  No, sir.

 4              THE CLERK:  Criminal cause for pleading, United

 5    States v. Alejandro Burzaco, Case Number 15 CR 252.  Please

 6    state your appearances for the record.

 7              MR. NITZE:  Sam Nitze, Evan Norris and Tanya Hajjar

 8    for the United States.  Good evening, Your Honor.

 9              THE COURT:  Good evening.

10              MR. CASEY:  Sean Casey and John Couriel for

11    Mr. Burzaco.  Good evening, Your Honor.

12              THE COURT:  Good evening.

13              MR. CASEY:  Good evening.

14              THE COURT:  Good evening.

15              THE DEFENDANT:  Alejandro Burzaco, Your Honor.  Good

16    evening.

17              THE COURT:  Good evening.

18              THE CLERK:  Mr. Burzaco, please right your right

19    hand.

20              (Defendant sworn.)

21              THE DEFENDANT:  Yes, I do.

22              THE CLERK:  Thank you.

23              MR. NITZE:  Judge, if I could just before we begin,

24    note for the record that the prior courtroom closure

25    proceedings, as Your Honor knows, was held ex parte, and that
```

1    was done with the consent of the defendant and his counsel.

2    So I wanted the record to reflect that.

3            MR. CASEY:  That's correct.

4            THE COURT:  Thank you.  So what is Mr. Burzaco going

5    to do today?

6            MR. CASEY:  He's going to plead guilty today, Your

7    Honor.

8            THE COURT:  And what is he going to plead guilty to?

9            MR. CASEY:  He's going to plead guilty to three

10   counts of the indictment:  Count 1, which is the racketeering

11   conspiracy; Count 39 and Count 40.

12           THE COURT:  Okay.  All right.  I have a consent to

13   have a plea taken before a United States Magistrates Judge.  I

14   see it appears to have been signed by counsel and the

15   defendant, is that correct?

16           MR. CASEY:  That's correct, Your Honor.

17           THE COURT:  Are you satisfied that Mr. Burzaco's

18   consent is knowing and voluntary?

19           MR. CASEY:  I am, Your Honor.

20           THE COURT:  Mr. Burzaco, did you sign this consent

21   form?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Before you signed it, did you discuss it

24   with your lawyer?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Did he explain to you that you have the

2     right to have Judge Dearie, the district judge who is

3     supervising the case, hear your plea?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And that there no one would be upset

6     with you if you chose to have him hear the plea rather than

7     me?

8          THE DEFENDANT:  I understood, Your Honor, and I

9     agree, Your Honor.

10          THE COURT:  Okay.  Are you making this decision

11     voluntarily?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Do you have any questions?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  I'm going to ask you a lot of questions.

16     You'll be answering them under oath.  You need to answer them

17     fully and honestly.  If you don't do that, you could be

18     prosecuted for perjury.  Do you understand?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  If there's anything that you don't

21     understand or that you'd like to discuss with your lawyers,

22     feel free to speak with them privately or to ask me.

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Okay.  So what is your full name?

25          THE DEFENDANT:  Alejandro Burzaco, B-U-R-Z-A-C-O.

```
 1                THE COURT:  How old are you?

 2                THE DEFENDANT:  Fifty-one.

 3                THE COURT:  What is the last level of schooling that

 4      you finished?

 5                THE DEFENDANT:  I studied economics, a degree in

 6      economics in Argentina -- in New York City and Argentina.

 7                THE COURT:  And tell me about your language ability.

 8      Have you been able to communicate with your lawyers in

 9      English?

10                THE DEFENDANT:  Yeah.  I've been studying in

11      Argentina English since kindergarten.  I work 15 years for

12      Citibank, so I practice my English, and I've been dealing with

13      U. S. companies very often, so I had a good chance to

14      practice.  I understood what my lawyer explained me, and I'm

15      perfectly aware of the decision I'm taking here.

16                THE COURT:  Okay.  And do you believe that your

17      lawyers understood what you said to them?

18                THE DEFENDANT:  Yeah, I am.  He speaks Spanish

19      perfectly (indicating Mr. Couriel), and still, both in Spanish

20      and English, we communicated to each other perfectly.

21                THE COURT:  And so would you describe yourself as

22      fluent in English?

23                THE DEFENDANT:  I describe myself as fluent in

24      English, maybe with an Argentine accent, but fluent in

25      English.
```

```
 1                THE COURT:  Not a problem.

 2                Counsel?

 3                MR. CASEY:  Yes.  I've understood Mr. Burzaco at

 4    every stage and my impression is, he understands a hundred

 5    percent of what I tell him.

 6                THE COURT:  Okay.

 7                MR. COURIEL:  I share that, Your Honor.  Yes.

 8                THE COURT:  You speak to him in Spanish, as well?

 9                MR. COURIEL:  Whenever the occasion seems to require

10    even the slightest bit of bilingual support, Your Honor, I've

11    been able to provide it.

12                THE COURT:  Good.  All right.  So there's no need

13    for an interpreter, correct?

14                THE DEFENDANT:  Correct, Your Honor.

15                MR. CASEY:  We agree, Your Honor.

16                THE COURT:  So Mr. Burzaco, are you now or have you

17    presently -- recently been under the care of a doctor or a

18    psychiatrist?

19                THE DEFENDANT:  No, Your Honor.

20                THE COURT:  In the past 24 hours, have you taken any

21    narcotic drugs?

22                THE DEFENDANT:  No, Your Honor.

23                THE COURT:  Alcoholic beverages?

24                THE DEFENDANT:  No, Your Honor.

25                THE COURT:  Medicine or pills of any kind?
```

```
 1                THE DEFENDANT:  Cholesterol, to reduce cholesterol
 2    levels.
 3                THE COURT:  Okay.  Do those pills have any side
 4    effects at all?
 5                THE DEFENDANT:  No, they don't have any side effect.
 6    It's just very low dose and I take it regularly.
 7                THE COURT:  Okay.
 8                MR. NORRIS:  Your Honor, I'm sorry to interrupt.  If
 9    I could just step out of the courtroom --
10                THE COURT:  Sure.
11                MR. NORRIS:  -- if that's all right?  Thank you.
12    (Exits courtroom.)
13                THE COURT:  All right.  So I'm just going to go
14    through those questions again.  In the past 24 hours, have you
15    taken any narcotic drugs, alcoholic beverages or medicine or
16    pills of any kind, other than the cholesterol medication?
17                THE DEFENDANT:  No, Your Honor.
18                THE COURT:  Have you ever been hospitalized or
19    treated for a narcotic addiction?
20                THE DEFENDANT:  No, Your Honor.
21                THE COURT:  Alcoholism?
22                THE DEFENDANT:  No, Your Honor.
23                THE COURT:  A mental or emotional problem?
24                THE DEFENDANT:  No, Your Honor.
25                THE COURT:  Is your mind clear now?
```

```
 1              THE DEFENDANT:  Yes, Your Honor.
 2              THE COURT:  Do you understand why you're here and
 3    what's happening here today?
 4              THE DEFENDANT:  I understand perfectly, Your Honor.
 5              THE COURT:  Okay.  I have a few questions for your
 6    lawyer, then I'll come back to you.
 7              Have you discussed this matter fully with
 8    Mr. Burzaco?
 9              MR. CASEY:  We have, Your Honor.
10              THE COURT:  Does he understand the rights that he
11    would be waiving by pleading guilty?
12              MR. CASEY:  That's my understanding, Your Honor,
13    yes.
14              THE COURT:  Is he capable of understanding the
15    nature of these proceedings?
16              MR. CASEY:  Yes, Your Honor.
17              THE COURT:  Do you have never doubt as to his
18    competence to plead at this time?
19              THE DEFENDANT:  I have no doubt.
20              THE COURT:  Have you advised him of the possible
21    maximum and minimum sentence and fine that he would face?
22              MR. CASEY:  I have, Your Honor.
23              THE COURT:  Have you explained to him the effect of
24    the Sentencing Guidelines?
25              MR. CASEY:  Yes, we've gone through the Guidelines,
```

1  Your Honor.

2          THE COURT:  Have you advised him that if he's not a

3  citizen of the United States, he would face possible

4  deportation proceedings after he serves his sentence?

5          MR. CASEY:  Yes, Your Honor.  I have.

6          THE COURT:  Have you explained to him that there's

7  no guarantee what his sentence will be or even what his

8  Guideline range will be?

9          MR. CASEY:  Absolutely, Your Honor.

10         THE COURT:  And do you believe he understands the

11 Guidelines?

12         MR. CASEY:  I do, Your Honor.

13         THE COURT:  Did you hear everything that your lawyer

14 has said?

15         THE DEFENDANT:  Yeah.  I understood what --

16         THE COURT:  And do you agree with him?

17         THE DEFENDANT:  Yes, I agree, Your Honor.

18         THE COURT:  Have you discussed your case with him

19 fully?

20         THE DEFENDANT:  I discuss it fully, Your Honor.

21         THE COURT:  Is there anything else you would like to

22 ask him at this time?

23         THE DEFENDANT:  No, Your Honor.

24         THE COURT:  Are you satisfied to have him represent

25 you?

```
 1                    THE DEFENDANT:  Very satisfied.

 2                    THE COURT:  All right.  So I have here a copy of the

 3       indictment.  And have you had a chance to look over the

 4       charges against you in the indictment?

 5                    THE DEFENDANT:  Yes, Your Honor.

 6                    THE COURT:  Have you discussed them with your

 7       lawyer?

 8                    THE DEFENDANT:  I discussed them with my lawyers.

 9                    THE COURT:  And specifically, Counts 1, 39 and 40,

10       are you familiar with those?

11                    THE DEFENDANT:  Yes.  I discuss it fully.  I learned

12       and I'm perfectly aware, Your Honor.

13                    THE COURT:  Okay.  And would you like me to explain

14       them again to you or do you understand them?

15                    THE DEFENDANT:  I understand, Your Honor.

16                    THE COURT:  Counsel, are you satisfied your client

17       understands?

18                    MR. CASEY:  Yes, Your Honor.  We have been through

19       them several times and I'm fully confident he understands the

20       nature of the charges.

21                    THE COURT:  For my benefit, what's the government

22       prepared to prove in those three counts?

23                    MR. NITZE:  Your Honor, Count 1 of the indictment

24       alleges a racketeering conspiracy, and the government would be

25       prepared to prove that -- prepared to prove that conspiracy.
```

1          It alleges an enterprise that comprises a number of

2     entities that are responsible for the governance and promotion

3     of soccer across the globe, and those entities include FIFA,

4     which is the global governing body; a number of continental

5     confederations that fall under the FIFA umbrella; and then

6     below that, regional and national federations, as well as a

7     set of sports marketing companies whose role was to further

8     promote the sport.  Those entities together are alleged as an

9     association-in-fact enterprise.

10          The defendant and several coconspirators are charged

11     with conspiring to corrupt that enterprise through wire fraud,

12     money laundering and other crimes.

13          The defendant is a sports marketing executive who,

14     in the context of this charged conspiracy, participated in a

15     number of schemes to bribe -- pay bribes or kickbacks to

16     soccer officials in exchange for the marketing rights to

17     soccer tournaments, including the Copa Libertadores and the

18     Copa América, which are two prominent tournaments played

19     chiefly in South America.  That is the crux of the

20     racketeering conspiracy.

21          Count 39 alleges a wire fraud conspiracy, and that

22     relates specifically to the rights to the Copa América

23     tournament, specifically, that the defendant and others

24     conspired to deprive FIFA and some of these other soccer

25     entities of their right to the honest services of their

```
 1    employees, those employees being the soccer officials who were

 2    the bribed recipients.  This scheme also contemplated the use

 3    of, and did in fact use the wire facilities of the United

 4    States.

 5              And relatedly, Count 40 alleges a money laundering

 6    conspiracy in which the defendant agreed essentially to the

 7    movement of money in furtherance of the scheme I've just

 8    described, and that money did, in fact, come into and out of

 9    the United States.

10              THE COURT:  Thank you.

11              Any questions?

12              THE DEFENDANT:  No questions.

13              THE COURT:  Okay.  The next section of my

14    questioning concerns your rights.  You have a number of rights

15    under the Constitution and laws of the United States.  If you

16    plead guilty, you will be giving them up.  So listen

17    carefully.  If you have any questions, let me know.  I'm sure

18    your lawyer has gone over this with you many times.

19              You have a right to plead not guilty.  Do you

20    understand?

21              THE DEFENDANT:  I understand, Your Honor.

22              THE COURT:  If you continue to plead not guilty,

23    it's your right under the Constitution and laws of the United

24    States to a speedy public trial by jury, with the help of your

25    lawyers on the charges contained in the indictment against
```

1    you.  Do you understand?

2              THE DEFENDANT:  I understand, Your Honor.

3              THE COURT:  If at any time in this process you

4    cannot afford to retain an attorney, the Court will appoint a

5    lawyer to represent you at all stages of the proceedings all

6    the way through trial and if you're convicted, through an

7    appeal process and at no cost to you.  Do you understand?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  At your trial, you would be presumed

10   innocent.  The government would have to prove your guilt by

11   competent evidence that's admissible in court, and convince a

12   jury beyond a reasonable doubt of any charges it wishes to

13   convict you of.  Do you understand?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  You have no burden or obligation to

16   prove that you're innocent.  You don't even have to present

17   any evidence.  The entire burden is on the government.  Do you

18   understand?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Even if you did everything that the

21   government has accused you of, if the government cannot

22   convince a jury beyond a reasonable doubt that you're guilty,

23   the jury would have the duty to find you not guilty.  Do you

24   understand?

25             THE DEFENDANT:  Yes, Your Honor.

```
 1              THE COURT:  During your trial, the government's
 2    witnesses would have to come to court.  They would have to
 3    testify in your presence.  Your lawyer would have the right to
 4    cross-examine them, to object to the government's evidence and
 5    to present evidence in your defense.  Do you understand?
 6              THE DEFENDANT:  Yes, Your Honor.
 7              THE COURT:  You also would have the right to compel
 8    witnesses who you wish to testify at trial to appear before
 9    the Court at trial on your behalf.  Do you understand?
10              THE DEFENDANT:  Yes, Your Honor.
11              THE COURT:  At your trial, you would have a choice
12    whether or not to testify.  You have the right to testify, but
13    no one can force you to do so.  You have a Fifth Amendment
14    privilege which gives you the right to remain silent and not
15    to incriminate yourself.  Do you understand how that works?
16              THE DEFENDANT:  Yes, Your Honor.
17              THE COURT:  So if you decided to go to trial but not
18    to testify, Judge Dearie would instruct the jurors that they
19    could not hold that against you or assume that you're guilty
20    because you didn't testify in your own defense.  Do you
21    understand?
22              THE DEFENDANT:  Yes.  Yes, Your Honor.
23              THE COURT:  Any questions so far?
24              THE DEFENDANT:  No.  No questions, Your Honor.
25              THE COURT:  So if you plead guilty and if the Court
```

```
 1    accepts your guilty plea, you will be giving up your right to
 2    a trial and the other rights that I just explained.  Do you
 3    understand that?
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  You will not have a trial.  You will not
 6    have the right to appeal from the judgment of guilty.  The
 7    Court will simply enter a judgment that you're guilty based on
 8    what you said here today.
 9              THE DEFENDANT:  I understand, Your Honor.
10              THE COURT:  And if you do plead guilty, I'm going to
11    ask you some questions.  I have to be sure that you really are
12    guilty.  You'll have to answer them, admit your guilt, and
13    when you do that, you'll be giving up your right to remain
14    silent and not to incriminate yourself.  Do you understand?
15              THE DEFENDANT:  Yes.  Yes, I understand, Your Honor.
16              THE COURT:  Any questions so far?
17              THE DEFENDANT:  No, no questions.
18              THE COURT:  Are you willing to give up your right to
19    a trial and the other rights that I've just discussed?
20              THE DEFENDANT:  Yes, Your Honor.
21              THE COURT:  Now, I have Court Exhibit 1, which is an
22    agreement.  Is this the only agreement between the parties at
23    this time?
24              MR. CASEY:  It is, Your Honor.
25              MR. NITZE:  Yes, Judge, it is.
```

```
 1                  THE COURT:  On the last before Exhibit A -- that's

 2    page 20 -- there is a signature page.  It's not dated,

 3    however.  Would you like me to fill the date in or would you

 4    like to do it?

 5                  MR. NITZE:  Please.

 6                  THE COURT:  Okay.  Is the date today?

 7                  MR. NITZE:  It is.

 8                  THE COURT:  Okay.  I see a signature above your

 9    name, Mr. Burzaco.

10                  MR. CASEY:  He has asked --

11                  THE COURT:  Do you want to see?

12                  THE CLERK:  (Showing document to the defendant.)

13                  THE DEFENDANT:  It's my name, Your Honor.

14                  THE COURT:  Okay.  Thank you.

15                  All right.  I'm going to go through the agreement,

16    through parts of the agreement, if you have a copy and would

17    like to follow along, starting at paragraph one on page one.

18                  In paragraph one, you have agreed to plead guilty to

19    Counts 1, 39 and 40, the counts that were discussed a few

20    minutes ago.  If you do that, you'll be facing the following

21    possible penalties for each count.

22                  Starting with the racketeering conspiracy in Count

23    1, you are facing a minimum of zero years in prison and a

24    maximum of 20 years in prison.  Do you understand that?

25                  THE DEFENDANT:  Yes, Your Honor.
```

```
 1                THE COURT:  And do you understand what a conspiracy

 2    is?

 3                THE DEFENDANT:  Yes, I understand what a conspiracy

 4    is.

 5                THE COURT:  Okay.  So it's an agreement between two

 6    or more people to do something illegal?

 7                THE DEFENDANT:  And the agreement itself, it's a

 8    charge, whether the act is committed or not.

 9                THE COURT:  The agreement to do it, yes.  Okay.

10                MR. CASEY:  Yes, Your Honor. I mean --

11                THE COURT:  I just saw you were smiling.

12                MR. CASEY:  Oh, no, no, no.  He's been studying up.

13                THE COURT:  Yeah.  It looks like the pride of a good

14    professor.

15                MR. CASEY:  Thank you, Your Honor.

16                THE COURT:  Okay.  So yes, the agreement itself, the

17    agreement to do something illegal is what's charged, as

18    opposed to the illegal act, which would be somewhat later.

19                All right.  So 1(c) on page two describes the period

20    of supervised release.  Do you understand what supervised

21    release is?

22                THE DEFENDANT:  Yes, Your Honor.

23                THE COURT:  All right.  So if you're sentenced to

24    prison, when you are released, you could be placed on a period

25    of supervised release for a term of up to these years maximum,
```

1    and that would carry with it possible penalties if you violate

2    any condition of your release.

3             So for example, if you violate a condition of your

4    release, the maximum penalty is up to two years in prison

5    without credit for the time you've been on supervised release

6    or in prison on that charge.  Do you understand that?

7             THE DEFENDANT:  Yes, Your Honor.

8             THE COURT:  In paragraph (d), there's a maximum fine

9    of the greater of $250,000 or twice the gross profits of the

10   enterprise.  Do you understand that?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  Restitution, paragraph (e), is mandatory

13   in the full amount of each victim's losses as determined by

14   the Court.  So we don't know exactly how much that would be at

15   this time.  Do you understand?

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  Paragraph (f) speaks to a $100 Special

18   Assessment, which is a fee that you have to pay at the time of

19   sentencing.

20            Subparagraph (g) relates to criminal forfeiture, and

21   the agreement says that you consent to criminal forfeiture as

22   explained in paragraphs seven through 14 of the agreement.  Do

23   you understand that?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  And do you understand what's written in

1    paragraphs seven through 14?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Would you like to go through that any

4    further or do you feel you understand it well enough?

5            THE DEFENDANT:  I'm pretty comfortable.  I don't

6    think we need to go over it.

7            THE COURT:  Okay.  And counsel, are you satisfied,

8    as well?

9            MR. CASEY:  I am.  Thank you.

10           THE COURT:  Subparagraph (h), as described earlier,

11   there's a penalty of removal or deportation from the country,

12   and that's explained in paragraph 18.  Do you understand that?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  So any questions about Count 1?

15           THE DEFENDANT:  No, Your Honor.  No questions.

16           THE COURT:  Count 39, the wire fraud conspiracy,

17   again, a conspiracy, the minimum term is zero years in prison.

18   The maximum is 20 years in prison.  Do you understand?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  The supervised release term is similar

21   or identical to that I've just described above for Count 1, a

22   maximum of three years of supervised release following any

23   term of imprisonment.

24           The penalty for a violation of a condition of

25   supervised release is a maximum of two years in prison without

1    credit for the time you have been on pre-release supervised

2    release -- I'm sorry, pre-release imprisonment or post-release

3    supervision.

4           The maximum fine, again, is the greater of $250,000

5    or twice the gross gain or gross loss.  The restitution,

6    again, is mandatory in the full amount of each victim's losses

7    as will be determined by the Court.  There is, again, a $100

8    Special Assessment.  There's a penalty of criminal forfeiture,

9    again, as described in paragraphs seven through 14, and

10   there's a penalty of removal as described in paragraph 18.  Do

11   you have any questions about the penalties in Count 39?

12           THE DEFENDANT:  No, Your Honor.

13           THE COURT:  Count 40 is a money laundering

14   conspiracy count, again, a conspiracy charge.  Again, the

15   minimum term of imprisonment is zero years.  The maximum is 20

16   years.  Do you understand?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  The supervised release term is exactly

19   the same as I mentioned earlier.  Would you like me to repeat

20   that again or do you understand it?

21           THE DEFENDANT:  I understand, Your Honor.

22           THE COURT:  The maximum fine is the greater of

23   $500,000 or twice the value of the monetary instrument of

24   funds involved.  That's different from the fines that I

25   discussed earlier.  Do you understand?

```
 1                 THE DEFENDANT:  Yes, Your Honor.
 2                 THE COURT:  Restitution is mandatory, again, in the
 3     full amount of each victim's losses as determined by the
 4     Court.  There is a $100 Special Assessment.  Again, there's
 5     one for each one of these counts, a separate assessment.
 6     There is a criminal forfeiture provision, again, as described
 7     in paragraphs seven through 14, and a removal penalty as
 8     described in paragraph 18.  Any questions about Count 40?
 9                 THE DEFENDANT:  No, Your Honor.
10                 THE COURT:  Now, the next sentence is very
11     important.  It says, "The sentence imposed on each count may
12     run consecutively."  Do you see that?
13                 THE DEFENDANT:  Yeah.
14                 THE COURT:  And do you understand what that means?
15                 THE DEFENDANT:  Yes, Your Honor.
16                 THE COURT:  Okay.  So it means that you would serve
17     your sentence on Count 1 first, and once you have completed
18     that sentence, then you would begin the sentence on Count 39
19     and once you complete the sentence on Count 39, you would
20     begin your sentence on Count 40.
21                 THE DEFENDANT:  I understand, Your Honor.
22                 THE COURT:  Do you have any questions at all about
23     how that works?
24                 THE DEFENDANT:  No questions, Your Honor.  Thank
25     you.
```

```
 1                THE COURT:  Okay.  Mr. Casey, are you satisfied

 2   that Mr. Burzaco understands how consecutive sentences work?

 3                MR. CASEY:  I am, Your Honor.

 4                THE COURT:  Okay.  Thanks.

 5                Paragraph two on page four describes sentencing, and

 6   it talks about the Sentencing Guidelines.  And do you

 7   understand what the Guidelines are?

 8                THE DEFENDANT:  I understand, Your Honor.

 9                THE COURT:  All right.  So they're rules that help

10   Judge Dearie decide how to sentence you.  They're not binding.

11   They're advisory.  So that means that Judge Dearie has to

12   calculate the Guideline range, but then after he's calculated

13   the range, he will decide whether that range is fair or

14   whether a fair sentence would be above the Guideline range or

15   below the Guideline range.  So it could either be within,

16   above or below the range.

17                There's no guarantee at this time what your

18   Guideline range will be.  Do you understand that?

19                THE DEFENDANT:  I understand, Your Honor.

20                THE COURT:  And there's no guarantee at this time

21   what your sentence will be.

22                THE DEFENDANT:  I understand, Your Honor.

23                THE COURT:  Okay.  Is there anything that should be

24   placed on the record with respect to the Guidelines, any of

25   your agreements?  Is that not necessary at this time?
```

```
 1                MR. NITZE:  I think it's sufficient that counsel has

 2    reviewed, as I believe he has, the applicable Guidelines and

 3    how they work, including the applicable loss tables and so on

 4    with his client.

 5                MR. CASEY:  And we have, in fact, reviewed the

 6    Guidelines, their operation to the facts of the case, and

 7    Mr. Burzaco seems to understand them completely.

 8                THE COURT:  Okay.  Is that correct?

 9                THE DEFENDANT:  That's correct, Your Honor.

10                THE COURT:  So any estimates that you have been

11    given either by the government or by your attorneys would just

12    be estimates.  Judge Dearie makes the final decision with your

13    input, of course.  But even Judge Dearie does not know what

14    your Guideline range will be today.

15                THE DEFENDANT:  I understand, Your Honor.

16                THE COURT:  Okay.  So there are other factors that

17    go into sentencing, and they are enunciated in 18 U. S. Code,

18    3553(a), and they include not only the Guidelines, but the

19    Court also must consider such other things as the

20    circumstances of the offense, your background, your respect

21    for the law, just or fair punishment, deterrence, protecting

22    the public from further crimes, and your personal or

23    individual need for effective correctional treatment.  Do you

24    understand?

25                THE DEFENDANT:  Yes, Your Honor.
```

```
 1                THE COURT:  And as I said, there's no guarantee that

 2   you will be sentenced within the Guideline range, and you will

 3   not be able to take back your guilty plea if you're not

 4   sentenced within the Guideline range.  Do you understand?

 5                THE DEFENDANT:  Yes, Your Honor.

 6                THE COURT:  Any questions so far?

 7                THE DEFENDANT:  No.  No questions, Your Honor.

 8                THE COURT:  Now this is a -- this agreement has many

 9   pages.  Is there anything else in the agreement that either

10   party would like have placed on the record?

11                MR. NITZE:  No, Your Honor.

12                MR. CASEY:  No, Your Honor.

13                THE COURT:  Is there anything else in the agreement

14   you would like to go through?

15                THE DEFENDANT:  No, Your Honor.

16                THE COURT:  If you're sentenced to prison, there's

17   no early release on parole in federal court.  Do you know what

18   parole is?

19                THE DEFENDANT:  Yes, Your Honor.

20                THE COURT:  Okay.  We have that in state court, but

21   not in federal court.  It's not applicable here.

22                THE DEFENDANT:  Okay.

23                THE COURT:  Okay.  Do you have any questions you

24   would like to ask your lawyer confidentiality?

25                THE DEFENDANT:  No, Your Honor.
```

1           THE COURT:  Anything you would like to ask me at

2    this time?

3           THE DEFENDANT:  No thank you, Your Honor.

4           THE COURT:  Anything else that counsel would like me

5    to inquire into before I ask him whether he's ready to plead?

6           MR. NITZE:  Not from the government, Judge.

7           MR. CASEY:  Nothing from us, Your Honor.

8           THE COURT:  Okay.  So are you ready to plead?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Okay.  Mr. Casey, do you know any reason

11   why Mr. Burzaco should not plead guilty to Counts 1, 39 and

12   40?

13          MR. CASEY:  I do not, Your Honor.

14          THE COURT:  Mr. Burzaco, how do you plead to Counts

15   1, 39 and 40, guilty or not guilty?

16          THE DEFENDANT:  Guilty, Your Honor.

17          THE COURT:  Are you pleading guilty voluntarily?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Has anyone forced you or threatened you

20   to make you agree to plead guilty?

21          THE DEFENDANT:  No, Your Honor.

22          THE COURT:  Has anyone promised you anything that

23   was not in the agreement that made you agree to plead guilty?

24          THE DEFENDANT:  No, Your Honor.

25          THE COURT:  Has anyone promised you what your

```
 1    sentence will be?

 2              THE DEFENDANT:  No, Your Honor.

 3              THE COURT:  All right.  So I'm going to ask you to

 4    explain to me in your own words, either -- and if you have a

 5    statement, feel free to read it.

 6              MR. CASEY:  Your Honor -- go ahead.  I'm sorry.

 7    Mr. Burzaco prepared a statement with John and I.  He'd like

 8    to read from that, if that's possible.

 9              THE COURT:  Sure.

10              THE DEFENDANT:  My name is Alejandro Burzaco.

11              In 2005, I acquired a minority interest in a company

12    called Torneos y Competencias, Torneos.  We will call it

13    Torneos going forward.  Torneos is a sports TV production

14    company that owns a local sports channel in Argentina and

15    employees 800 people in Argentina.  In October 2006, I became

16    Chief Executive Officer of Torneos.

17              Around 2005, a founding owner of Torneos informed me

18    that a joint venture in which Torneos participated, obtained

19    the television rights to broadcast South American soccer

20    tournaments in part by making bribe payments and kickbacks to

21    officials of the South American Football Confederation.

22              One of FIFA's six continental confederations, that

23    it's commonly known as CONMEBOL, C-O-N-M-E-B-O-L, Conmebol.

24              I was informed that the agreement had been in place

25    for sometime.  I know that I should have walk away at that
```

1    point, but instead, I agreed to work for Torneos, and agreed

2    to take an active role in the bribery schemes.  I regret the

3    decision.  I was wrong.

4         At various times starting in 2005 and continuing to

5    2015, I agreed to pay and did pay bribe and kickbacks to

6    multiple CONMEBOL, FIFA and other officials affiliated with

7    the sport of soccer to obtain and maintain the marketing

8    rights to various tournaments, including the Copa

9    Libertadores.  Libertadores is L-I-B-E-R-T-A-D-O-R-E-S.  The

10   Copa Libertadores, Copa Sudamericana, Copa América, and the

11   2018, 2022, 2026, and 2030 editions of the World Cup, and to

12   various friendly matches.  I knew that these officials were

13   using their positions of authority and trust to enrich

14   themselves.

15        During this period, FIFA, CONMEBOL, CONCACAF --

16   CONCACAF, which is the U. S.-based confederation, and other

17   related soccer organizations and sports marketing companies

18   were engaged in promoting and regulating the sport of soccer

19   worldwide as part of an ongoing organization.  Among other

20   things, these organizations held sports-related events and

21   conducted business in the United States and used financial

22   institutions based in the United States.  The bribery and

23   kickback schemes were not disclosed to FIFA, CONCACAF or

24   CONMEBOL.

25

LISA SCHMID, CCR, RMR

1

2

3                                     The federation presidents

4  agreed to endorse the Copa Libertadores, Sudamericana, and

5  Recopa Sudamericana contracts, so long as they received yearly

6  bribe payments or kickbacks in exchange for their loyalty.

7           I agreed to continue these payments into 2015.  I

8  also agreed to pay and did pay bribes to other CONMEBOL

9  officials in connection with these tournaments.

10          Torneos and I profited from these payments directly

11 and indirectly by securing these rights in a company of which

12 Torneos was a shareholder.  That company was able to

13 commercialize, and Torneos was able to successfully produce

14 the tournaments covered by these rights.

15          To give another example, in or around 2011 and 2012,

16 I, on behalf of Torneos, came together with members of two

17 other sports marketing companies to form a new joint venture.

18 In 2013, the newly-formed company was awarded the contract

19 with CONMEBOL for the 2015, 2019 and 2023 editions of the Copa

20 América tournament.  To secure the contract, I agreed with

21 executives from the other two companies to pay multiple bribes

22 or kickbacks totaling tens of millions of dollars to CONMEBOL

23 and FIFA officials in exchange for their endorsement of the

24 new contract.

25          I knew that a special edition of the Copa América

1    tournament was to be played in the United States in 2016.

2    That edition was jointly organized by CONMEBOL and CONCACAF.

3    Officials who held positions of authority and trust within

4    CONMEBOL and CONCACAF approached our joint venture and

5    demanded that we and members of our companies pay a bribe or

6    kickback in connection with the rights to this special edition

7    of the tournament.

8              Ultimately, I decide not to pay a bribe or kickback

9    to CONMEBOL and CONCACAF officials in connection with the 2016

10   tournament because of fear of law enforcement scrutiny.

11   Nonetheless, I know that it was wrong to agree with the bribe

12   payment itself, and it will make a difference, given what my

13   understanding of conspiracy.

14             As to all this conduct, I knew that the United

15   States banking system would be involved in transferring

16   payments related to the contracts secured through bribery and

17   through exploitation of the commercial rights to the

18   tournaments.  I also knew that the United States banking

19   systems would be used to receive and transfer payments into

20   and out of the United States to promote the rights that were

21   secured through bribery I have described today and the

22   underlying schemes, also.  I also knew it was highly likely

23   that the United States banking system would be used to

24   facilitate bribe payments, as well, especially because the

25   transactions involved often were denominated in United States

1   dollars.

2           In addition, I traveled to the United States on

3   several occasions to advance the schemes alleged in Counts 1,

4   39 and 40, including trips to New York and Miami.

5           That's it.  Thank you, Your Honor.

6           THE COURT:  Venue?

7           MR. NITZE:  Yes.  The government would be prepared

8   to prove at trial that venue properly lies on all three counts

9   in the Eastern District of New York, and the defendant, I

10  understand it, is stipulating that the government could prove

11  venue at trial.  It would just ask that the Court inquire of

12  the defendant himself whether he is, in fact, stipulating to

13  venue.

14          MR. CASEY:  The government's representation is

15  correct, Your Honor.  We're prepared to stipulate to venue

16  here.

17          THE COURT:  All right.  Do you understand what your

18  lawyer said?

19          THE DEFENDANT:  Yes.  I understand, Your Honor.

20          THE COURT:  All right.  So you're agreeing to venue

21  here in the New York Eastern District of New York?

22          THE DEFENDANT:  (Nods head affirmatively.)

23          THE COURT:  And I think understood from your

24  allocution that some of the illegal activities took place --

25  may have taken place in the Eastern District of New York or

1   that you may have arrived in the -- I'll speak to your lawyer.

2           That he may have arrived in the Eastern District of

3   New York.

4           MR. CASEY:  It is possible that he may have arrived

5   at JFK Airport, Your Honor, but that's not going to form the

6   basis of our consent to the venue.

7           THE COURT:  Got it.

8           MR. NITZE:  (Nods head affirmatively.)

9           THE COURT:  Anyway.  You've consented?

10          MR. CASEY:  We consent to venue.  Yes, Your Honor.

11          THE COURT:  Do you have any questions about what

12  you're doing?

13          THE DEFENDANT:  No, Your Honor.  I understand and I

14  consent.  Yes.

15          THE COURT:  Any other issues with respect to the

16  allocution?

17          MR. NITZE:  No, Judge.  I believe that allocution

18  covers all three of the charged offenses.

19          THE COURT:  Anything else today?

20          MR. CASEY:  Nothing, Your Honor.

21          THE COURT:  Okay.  All right.  Mr. Burzaco, I find

22  that you're acting voluntarily.  You fully understand your

23  rights, the charges against you, the consequences of your

24  guilty plea, including the possible sentence, fine,

25  restitution, deportation and other penalties, that you fully

1   understand the charges and the complexity of the charges, and

2   that you understand that there's no guarantee what your

3   sentence will be.  So I therefore recommend -- and I'll also

4   find that there's a factual basis for the plea, that you did,

5   in fact, do what's charged in Counts 1, 39 and 40 of the

6   indictment.  So therefore, I recommend that Judge Dearie

7   accept your plea of guilty for those three counts.

8            THE DEFENDANT:  (Nods head affirmatively.)

9            MR. CASEY:  Thank you, Your Honor.

10           THE DEFENDANT:  Thank you, Your Honor.

11           MR. CASEY:  Your Honor, we have one application to

12   make.

13           THE COURT:  Uh-hum (affirmative response)?

14           MR. CASEY:  When the defendant was arrested --

15   actually, sorry.  When the defendant surrendered, he was

16   placed under a bond and the bond is here.  It's a $20 million

17   bond secured by multiple assets, multiple sureties.

18           We'd ask for two parts of the bond to be changed.

19   The first part is, the defendant has to be under house arrest

20   with electronic monitoring.  And the second application is,

21   the defendant, as a requirement of the bond, is employing a

22   team of security professionals to watch him 24 hours a day,

23   seven days a week.

24           We'd like to ask that those two provisions be

25   amended or be removed from the bond, which would allow the

```
 1    bond to then -- the defendant to then be free to travel within

 2    the Eastern District of New York and the Southern District of

 3    New York, and he would report to Pretrial as directed by

 4    Pretrial.  So just to summarize, it would be remove the

 5    monitoring, remove the house arrest and remove the requirement

 6    of the 24 hour security.

 7               MR. NITZE:  The government consents to that

 8    application, Your Honor, in light of the defendant's

 9    acceptance of responsibility here, but also the remaining

10    provisions which are still quite -- it's a large bond amount,

11    and it is partially secured and there are a number of sureties

12    who consent to that modification.

13               And if Your Honor is inclined to grant it, we would

14    further ask that the modification order just remain oral and

15    under seal as part of the transcript, with the exception that

16    I be permitted to communicate the changes to Pretrial

17    Services, so that they can arrange to cut off the electronic

18    monitoring and set up a reporting schedule for Mr. Burzaco.

19               THE COURT:  So Mr. Burzaco is under the supervision

20    of Pretrial Services at this time, is that correct?

21               MR. NITZE:  He is.

22               THE COURT:  Is anyone from Pretrial Services here?

23    I don't think so.

24               MR. NITZE:  I don't believe so either.  I did speak

25    with Anna Lee, who is handling -- is overseeing the electronic
```

```
 1    monitoring and she is aware that there's at least a
 2    possibility that this modification would be made.
 3              THE COURT:  Right.
 4              MR. NITZE:  And she just asks that I communicate
 5    with her after today's proceedings in the event that there is
 6    a change to report.
 7              THE COURT:  Okay.  And where does Mr. Burzaco need
 8    to travel?  I understand Southern and Eastern Districts.  New
 9    York City, Long Island, all New York state or just wherever
10    the Southern District ends?
11              MR. CASEY:  I think the important parts are
12    Westchester County, all of Manhattan and Brooklyn.
13              THE COURT:  Okay.  Do you understand the travel
14    restrictions?
15              THE DEFENDANT:  Yes, I understand and I learned what
16    the Southern and Eastern District of New York's area compound,
17    and I will thank you if I can get this.
18              THE COURT:  Sure.  And you'll get a map from
19    Pretrial Services, so you won't make a mistake.
20              THE DEFENDANT:  Yes.
21              THE COURT:  So you don't need to go to New Jersey,
22    Connecticut, anywhere.  It's just these areas, correct?
23
24
25
```

```
 1
 2
 3
 4          MR. CASEY:  Thank you very much.
 5          THE COURT:  And this is an oral modification.
 6  Pretrial Services will be notified.
 7          MR. NITZE:  Thank you, Judge.
 8          THE COURT:  I take it you'll be doing the
 9  notification today.  Are you going down to see them today to
10  get the electronic monitoring removed or is it too late?
11          MR. CASEY:  I believe they may be closed for the
12  day.
13          MR. NITZE:  I believe they'll switch it off, but in
14  terms of removing the physical apparatus, that will have to
15  happen another time.
16          THE COURT:  All right.  Mr. Burzaco will come back
17  to Pretrial Services.
18          THE DEFENDANT:  Yes, Your Honor.
19          THE COURT:  Okay.  Is that the only other
20  application.
21          MR. NITZE:  That is the only application, yes,
22  Judge.
23          THE CLERK:  Judge Dearie has set a sentencing
24  control date of June 24th, 2016 at 10:00 a.m.
25          MR. CASEY:  Thank you.
```

```
 1              THE COURT:  Thank you.

 2              MR. NITZE:  Thank you, Judge.

 3              THE DEFENDANT:  Thank you, Your Honor.

 4              (Proceedings concluded.)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```