Sealed By Order Of Court                                          1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,              :      15-CR-0252

                v.                     :      U.S. Courthouse
                                              Brooklyn, New York
JOSE MARGULIES,                        :
                                              November 25, 2105
                       Defendant.      :      9:30 o'clock a.m.

- - - - - - - - - - - - - - - - - - - X

                    TRANSCRIPT OF PLEA
            BEFORE THE HONORABLE ROBER M. LEVY
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:            ROBERT L. CAPERS
                               United States Attorney
                               By:   KEITH EDELMAN
                                     SAMUEL NITZE
                               Assistant U.S. Attorneys
                               225 Cadman Plaza East
                               Brooklyn, New York 11201

For the Defendant:             ANDRES RIVERO, ESQ.
                               JORGE MESTRE, ESQ.
                               DANIEL SOX, ESQ.

Court Reporter:                Anthony M. Mancuso
                               225 Cadman Plaza East
                               Brooklyn, New York 11201
                               (718) 613-2419

Proceedings recorded by mechanical stenography, transcript
produced by CAT.

ANTHONY M. MANCUSO,   CSR   OFFICIAL COURT REPORTER

1          (Case called; both sides ready.)

2          MR. EDELMAN:   Keith Edelman and Samuel Nitze on

3    behalf of the United States.   Good morning your Honor.

4          THE COURT:   Good morning.

5          MR. RIVERO:   Good morning, your Honor.   Andres

6    Rivero, George Mestre and Daniel Sox on behalf of

7    Mr. Margulies.

8          THE COURT:   Good morning.

9          THE CLERK:   Would the interpreter state your name

10   and the language you are interpreting for the record.

11         THE INTERPRETER:   James Hontoria.

12         (Interpreter sworn.)

13         THE COURT:   You're interpreting Spanish, is that

14   correct?

15         THE INTERPRETER:   Yes, your Honor.

16         THE COURT:   Swear in the defendant.

17         (Defendant sworn.)

18         THE COURT:   You have to say yes or no.

19         THE DEFENDANT:   Yes.

20         THE COURT:   What is Mr. Margulies going to do today.

21         MR. RIVERO:   Your Honor, he's going to enter a plea

22   of guilty.

23         THE COURT:   He's pleading guilty to counts in the

24   indictment, is that correct?

25         MR. RIVERO:   Yes, your Honor.

1          THE COURT:   I have here a consent form which appears
2     to be signed by counsel for both sides as well as the
3     defendant.   Mr. Margulies, have you read this consent form and
4     signed it?
5          THE DEFENDANT:   Yes.
6          THE COURT:   Do you understand that it's your right
7     if you wish to have Judge Dearie, district judge who
8     supervises this case, hear your plea allocution?
9          THE DEFENDANT:   Yes.
10         THE COURT:   And if you choose to do so, no one will
11    be upset, there will be no prejudice to you.
12         THE DEFENDANT:   Yes.
13         THE COURT:   I understand you wish to have me, a
14    Magistrate Judge, hear your plea and make a recommendation to
15    Judge Dearie whether to accept it.
16         THE DEFENDANT:   Yes.
17         THE COURT:   Did you make this decision voluntarily?
18         THE DEFENDANT:   Exactly, yes.
19         THE COURT:   Do you have any questions about what you
20    are doing?
21         THE DEFENDANT:   No, none.
22         THE COURT:   I'm going to ask you a lot of questions.
23    If there's anything that I say that you don't understand, just
24    ask me and I'll explain.
25         THE DEFENDANT:   Okay, yes.

1          THE COURT:  And you should feel free to discuss

2   anything you wish privately with your lawyers at any time.

3          THE DEFENDANT:  Okay, yes.

4          THE COURT:  You're under oath.  You need to answer

5   each question honestly and completely.  If you don't, you

6   could be prosecuted for perjury.

7          THE DEFENDANT:  Okay, yes.

8          THE COURT:  Do you have any questions?

9          THE DEFENDANT:  No.

10          THE COURT:  What is your full name?

11          THE DEFENDANT:  Jose Natalio, Margulies.

12          THE COURT:  How old are you?

13          THE DEFENDANT:  Seventy-six years old.

14          THE COURT:  What is the last level of schooling that

15   you finished?

16          THE DEFENDANT:  I didn't complete architectural

17   college, what I studied.

18          THE COURT:  Do you speak any English?

19          THE DEFENDANT:  Very little.

20          THE COURT:  Did you communicate with your lawyers in

21   Spanish?

22          THE DEFENDANT:  Exactly.

23          THE COURT:  Are you satisfied that each of you

24   understood each other?

25          THE DEFENDANT:  Yes, sir.

Sealed By Order Of Court                              5

1          THE COURT:   Counsel agree?

2          MR. RIVERO:   Yes, your Honor.

3          THE COURT:   Have you now or have you recently been

4    under the care of a doctor or a psychiatrist?

5          THE DEFENDANT:   Not a psychiatrist, but several

6    doctors, yes.

7          THE COURT:   In the past 24 hours have you taken any

8    medicine or pills?

9          THE DEFENDANT:   Yes.

10         THE COURT:   Could you briefly explain what you have

11   taken.

12         THE DEFENDANT:   Medicine by the name of Janumet for

13   diabetes.   And another one called Farxiga, also for diabetes.

14   And I took for gastric issues medicine by the name of Nexium.

15   And another one by the name of Uroproft for the prostate.   And

16   Allopurinol for the uric THE COURT:   Do any of these

17   medications have side effects?

18         THE DEFENDANT:   No.

19         THE COURT:   In the past 24 hours have you drunk any

20   alcoholic beverages?

21         THE DEFENDANT:   No.

22         THE COURT:   Or taken any narcotic drugs?

23         THE DEFENDANT:   None, never.

24         THE COURT:   Have you ever been hospitalized or

25   treated for alcoholism, narcotics addiction or a mental or

Sealed By Order Of Court                    6

1  emotional problem?

2          THE DEFENDANT:  No.

3          THE COURT:  Is your mind clear now?

4          THE DEFENDANT:  Yes, exactly.

5          I forgot from the medicines one that I take for the

6  blood pressure called Moduretic.

7          THE COURT:  Again, does that have any side effects?

8          THE DEFENDANT:  No.

9          THE COURT:  So, is your mind clear now?

10          THE DEFENDANT:  Perfectly.

11          THE COURT:  And you understand why you are here and

12  what's happening here today?

13          THE DEFENDANT:  Exactly.

14          THE COURT:  I have a few questions for your lawyer

15  and then I'll return to you.

16          Have you discussed this matter fully with your

17  client?

18          MR. RIVERO:  I have, your Honor.

19          THE COURT:  Does he understand the rights he would

20  be waiving by pleading guilty?

21          MR. RIVERO:  He does, your Honor.

22          THE COURT:  Is he capable of understanding the

23  nature of these proceedings?

24          MR. RIVERO:  Yes, your Honor.

25          THE COURT:  Do you have any doubts as to his

1    competency to plead at this time?

2              MR. RIVERO:   None whatsoever.

3              THE COURT:   Have you advised him of the possible

4    penalties he faces, including the maximum and minimum

5    sentences and fines that can be imposed on each count?

6              MR. RIVERO:   I have, your Honor.

7              THE COURT:   Have you discussed with him the effect

8    of the sentencing guidelines?

9              MR. RIVERO:   I have, sir.

10             THE COURT:   Have you explained to him the possible

11   immigration consequences that he would face if he pleads

12   guilty?

13             MR. RIVERO:   We have discussed immigration

14   consequences, your Honor.

15             THE COURT:   Have you explained to him the

16   restitution and criminal forfeiture penalties as well?

17             MR. RIVERO:   Yes, I have.

18             THE COURT:   Have you discussed with him the effect

19   of the sentencing guidelines and advised him that there's no

20   guarantee what his guideline range will be, whether he will be

21   sentenced within the guidelines or what his ultimate sentence

22   will be?

23             MR. RIVERO:   Yes, I have.

24             THE COURT:   Do you think he understood all of your

25   discussions?

ANTHONY M. MANCUSO,   CSR  OFFICIAL COURT REPORTER

1            MR. RIVERO:   Yes, judge.

2            And understanding that these things when you're

3    talking to a layperson takes some effort, we have taken the

4    effort.

5            THE COURT:   Mr. Margulies, did you hear what your

6    lawyer said?

7            THE DEFENDANT:   Yes.

8            THE COURT:   Do you agree with him?

9            THE DEFENDANT:   I'm in agreement.

10           THE COURT:   Have you discussed your case with him as

11   fully as you wish?

12           THE DEFENDANT:   Yes.

13           THE COURT:   Are you satisfied with him as your

14   attorney and with the representation he has provided you?

15           THE DEFENDANT:   Yes, sir.

16           THE COURT:   You have a number of rights which you

17   will give up if you plead guilty.  We're going to go through

18   those in just a moment.  But first I want to be sure you

19   understand the charges against you.

20           Has the indictment been translated in Spanish for

21   you?

22           THE DEFENDANT:   Yes.

23           THE COURT:   Have you read it and discussed it with

24   your lawyer?

25           THE DEFENDANT:   Yes, exactly.

1          THE COURT:  Do you understand all the charges?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Are you satisfied your client

4    understands the charges?

5          MR. RIVERO:  I am.

6          THE COURT:  Will the government briefly explain what

7    it's prepared to prove if this case goes to trial?

8          MR. EDELMAN:  Yes, your Honor.

9          Before I get to the nature of the charges, I would

10   just like the defendant and his counsel to confirm on the

11   record that the previous proceeding that was just held in

12   which the government moved ex parte to close the courtroom,

13   that the defendant consents to that proceeding having been

14   done ex parte and waives his appearance for those purposes.

15         MR. RIVERO:  Your Honor, I have explained to my

16   client and we do consent.

17         THE COURT:  Mr. Margulies, do you understand what

18   your lawyer said?

19         THE DEFENDANT:  Perfectly.

20         THE COURT:  And do you agree that your decision is

21   knowing and voluntary?

22         THE DEFENDANT:  Exactly.

23         MR. EDELMAN:  Thank you, your Honor.

24         The defendant is charged in four counts of the

25   indictment, one charge of racketeering conspiracy, two charges

1  of money laundering conspiracy and one charge of wire fraud

2  conspiracy.

3          Count one, which charges the racketeering

4  conspiracy, alleges and the government would prove through

5  witness testimony and other documentary evidence that there

6  was an enterprise comprising of a number of entities

7  associated in fact that were responsible for the governance

8  and promotion of the sport of the soccer across the world.

9  These entities included FIFA, six continental confederations

10 that fall under the FIFA umbrella, affiliated regional and

11 national federations along with various sports marketing

12 companies.

13         The defendant and several coconspirators are charged

14 with conspiring to corrupt that enterprise through wire fraud,

15 money laundering and other racketeering acts.  The defendant

16 specifically is charged with being a broadcasting executive

17 who in the context of the racketeering conspiracy participated

18 in a number of schemes to pay bribes and kickbacks to soccer

19 officials in exchange for the rights to soccer tournaments,

20 including the Copa America, and Copa American Centenario.

21 Specifically, the defendant is alleged to have facilitated

22 millions of dollars in bribes in connection with these

23 tournaments.

24         Count five charges a money laundering conspiracy

25 relating to the Copa America tournament.  In this count the

Sealed By Order Of Court                    11

1   indictment alleges that the defendant and others agreed to the

2   movement of money into and out of the United States to promote

3   a scheme to deprive FIFA and the other soccer entities of the

4   right to the honest services of their employees through the

5   payment of bribes and kickbacks.

6              Counts 39 and 40 relate to a scheme regarding the

7   Copa America Centenario tournament, which is a special edition

8   of the Copa America tournament to be played in the United

9   States next year.  Specifically count 39 alleges that the

10  defendant and others conspired to deprive FIFA and the other

11  soccer entities of their right to the honest services through

12  the payment of bribes and kickbacks to their employees.  That

13  scheme also contemplated the use of and did in fact use wire

14  facilities of the United States.  And finally count 40 is a

15  money laundering conspiracy relating to the wire fraud

16  conspiracy charged in count 39 in that the defendant agreed

17  with others to the movement of money into and out of the

18  United States to promote that bribery and kickback scheme

19  described in count 39.

20              THE COURT:  Do you have any questions about the

21  charges?

22              THE DEFENDANT:  No.

23              THE COURT:  And do you understand that these are

24  conspiracy charges and that a conspiracy is an agreement

25  between two or more people to do something illegal?

1            THE DEFENDANT:  Yes.

2            MR. RIVERO:  May I have one moment, your Honor?

3            (Counsel confers with the defendant.)

4            THE COURT:  Any further questions?

5            THE DEFENDANT:  No.

6            THE COURT:  So turning to your rights:  You have a

7    right to plead not guilty.

8            Do you understand?

9            THE DEFENDANT:  I understand.

10           THE COURT:  And if you continue to plead not guilty

11   you have the right under the constitution and laws of the

12   United States to a speedy public trial by jury with the help

13   of the lawyers who you have retained on the charges contained

14   in the indictment.

15           Do you understand?

16           THE DEFENDANT:  I understand.

17           THE COURT:  If at any time in this process you

18   cannot afford to retain an attorney, the court will appoint a

19   lawyer to represent you at all phases of the criminal

20   proceeding, including all the way through trial and on appeal

21   if you are convicted.

22           Do you understand?

23           THE DEFENDANT:  I understood.

24           THE COURT:  At your trial you would be presumed

25   innocent.  The government would have to overcome that

1    presumption and prove you guilty by competent evidence that's

2    admissible in court and persuade the jury beyond a reasonable

3    doubt of any charge it wishes to convict you of.  You would

4    not have any duty or burden to prove your innocence.

5              Do you understand?

6              THE DEFENDANT:  I understand.

7              THE COURT:  Even if you did everything the

8    government has accused you of, if the government can't

9    convince a jury beyond a reasonable doubt of your guilt the

10   jurors would have a duty to find you not guilty.

11             Do you understand?

12             THE DEFENDANT:  Yes.

13             THE COURT:  During your trial the government's

14   witnesses would have to come to court.  They would testify in

15   your presence.  Your lawyer would have the right to

16   cross-examine the government's witnesses, to object to the

17   government's evidence, to offer evidence in your defense and

18   to compel witnesses whom you wish to call to appear at trial.

19             Do you understand?

20             THE DEFENDANT:  Yes.

21             THE COURT:  At your trial you would have a choice

22   whether or not to testify.  No one could force you to testify.

23   You have a Fifth Amendment privilege to remain silent and not

24   to incriminate yourself.  If you chose to go to trial but not

25   to testify the court would instruct the jurors not to hold

1  that against you or assume that you're guilty because you did

2  not testify in your own defense.  If you plead guilty, and the

3  court accepts your plea, you'll be giving up your right to a

4  trial and the other constitutional rights I've just discussed.

5  There will be no trial, no right to appeal from the judgment

6  of guilty.  The court will simply enter a judgment that you're

7  guilty based on what you say here today.

8          THE DEFENDANT:  Okay.  I understand.

9          THE COURT:  And if you do plead guilty I'll have to

10 ask you questions to be sure you really are guilty.  You will

11 have to answer and admit your guilt.  In doing that you will

12 give up your right to remain silent and not incriminate

13 yourself.

14         THE DEFENDANT:  I understand.

15         THE COURT:  Are you willing to give up your right to

16 a trial and the other rights I just explained?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  All right.  Let's turn to the agreement.

19 Do you have a copy?

20         MR. RIVERO:  Yes, your Honor.

21         THE COURT:  Is this agreement the only agreement

22 between the government and the defense at this time?

23         MR. RIVERO:  Yes, your Honor, that is.

24         MR. EDELMAN:  Yes, your Honor.

25         THE COURT:  And looking at the last page I see that

1  my copy is not signed.  So I'm wondering do you have a signed

2  copy somewhere?

3            I have the copy.  I have now located the signed

4  copy.  It appears to be signed by all the attorneys and by

5  you, Mr. Margulies.

6            Did you sign this today?

7            THE DEFENDANT:  A few minutes ago.

8            THE COURT:  And before signing it did you read it

9  carefully and discuss it with your lawyer?

10            THE DEFENDANT:  Exactly.

11            THE COURT:  Was it translated into Spanish for you?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Do you have any questions at all about

14  the agreement?

15            THE DEFENDANT:  No.

16            THE COURT:  All right.  Turning to count one, on

17  page one, paragraph one:  If you plead guilty to count one,

18  which is a racketeering conspiracy charge, you face a minimum

19  of zero years in prison and a maximum of 20 years in prison.

20            Do you understand?

21            THE DEFENDANT:  Yes.

22            THE COURT:  There is a maximum period of supervised

23  release of three years, following any term of imprisonment.

24  There is a separate penalty for a violation of any condition

25  of your supervised release, which is that you could be

1   sentenced to prison for up to two years without credit for the

2   time you have been in prison on this case or on supervised

3   release.

4               Do you understand?

5               THE DEFENDANT:  I understand.

6               THE COURT:  There's a maximum fine of the greater of

7   $250,000 or twice the gross profits of the enterprise and a

8   mandatory provision for restitution in the full amount of each

9   victim's losses as determined by the court.

10              Do you understand?

11              THE DEFENDANT:  I understand.

12              THE COURT:  There's a fee called a special

13  assessment of $100 to be paid for this count, as well as a

14  penalty of criminal forfeiture and you have consented to

15  criminal forfeiture as explained in paragraphs seven through

16  14 of the agreement.

17              Do you understand?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Finally, there's a penalty of removal or

20  deportation as explained in paragraph 18, after you serve your

21  term or sentence.

22              Any questions?

23              THE DEFENDANT:  No.

24              THE COURT:  All right.  Counts five and 40 are money

25  laundering conspiracy charges.  The penalties are similar in

1  many ways.   The minimum term of imprisonment is zero years.

2  The maximum is 20 years for each count.

3            Do you understand?

4            THE DEFENDANT:  Yes.

5            THE COURT:  The maximum supervised release term is

6  three years.  And, again, the penalty for a violation of any

7  condition of release is a maximum of two years in prison,

8  again, without credit for the time you have been in prison on

9  this case or on supervised release.

10            THE DEFENDANT:  Okay.

11            THE COURT:  Do you understand?

12            THE DEFENDANT:  Yes.

13            THE COURT:  The maximum fine is the greater of

14  $500,000 or twice the value of the monetary instrument or

15  funds involved.  And, again, these penalties that I am

16  reciting apply separately to counts five and 40.

17            Do you understand that?

18            THE DEFENDANT:  Yes.

19            THE COURT:  There's a mandatory restitution in the

20  full amount of each victim's losses as determined by the

21  court, a separate 100 dollar special assessment for each

22  count, a penalty of criminal forfeiture as explained again in

23  paragraphs seven through 14 and a penalty of removal or

24  deportation as explained in paragraph 18, as I mentioned

25  earlier.

1           THE DEFENDANT:  Yes.

2           THE COURT:  Any questions about anything so far?

3           THE DEFENDANT:  No.

4           THE COURT:  Finally, count 39, which is a wire fraud

5   conspiracy, carries with it a minimum term of imprisonment of

6   zero years and a maximum of 20 years.

7           Do you understand?

8           THE DEFENDANT:  Yes.

9           THE COURT:  The maximum supervised release term is

10  three years.  Again, the penalty for a violation of any

11  condition of supervised release is up to two years in prison,

12  again, without credit for the time you have been in prison on

13  this charge or on supervised release.  There's a maximum fine

14  of the greater of $250,000 or twice the gross gain or gross

15  loss.  There's a mandatory restitution in the full amount of

16  each victim's losses as determined by the court.  There is a

17  separate 100 dollar special assessment for this count.

18  There's a provision for criminal forfeiture to which you have

19  again consented as in paragraphs seven through 14 and there is

20  a penalty of removal from the country as described in

21  paragraph 18 as we discussed earlier.

22          THE DEFENDANT:  That's clear.

23          THE COURT:  Now, this is important:  The court may

24  impose a sentence on each count that runs consecutively.

25          THE DEFENDANT:  Accumulative?

1          THE COURT:  Yes.

2          What that means is the first sentence would begin

3    and then end before you would your sentence on the second

4    count and the sentence on the second count would begin and end

5    before you would begin serving your sentence on the third

6    count.  So each sentence would be started and completed before

7    the next sentence begins.  And that's a possibility.  We don't

8    know what Judge Dearie will do, but you have to be prepared

9    for that possibility.

10         THE DEFENDANT:  I understand.

11         THE COURT:  Any questions about anything so far?

12         THE DEFENDANT:  No.

13         THE COURT:  All right.  Let's talk a little bit

14   about sentencing.  You and your lawyer have discussed the

15   sentencing guidelines and you told me that you understood

16   those discussions.

17         Is that correct?

18         THE DEFENDANT:  Exactly.

19         THE COURT:  So the guidelines are rules that will

20   help Judge Dearie decide how to sentence you.  Those are

21   advisory, not binding.  Judge Dearie will calculate your

22   guideline range and then decide whether to sentence you within

23   that range, above it or below it.  There's no guarantee at

24   this time what your sentence will be or what your guideline

25   range will be.

1        Do you understand?

2        THE DEFENDANT:  I understand.

3        THE COURT:  In addition to the guidelines, the court

4   must also consider other things such as the circumstances of

5   the offense, your background, your respect for the law, fair

6   or just punishment, deterrence, protecting the public from

7   further crimes, and your individual need for effective

8   correctional treatment.  This is all within 18 United States

9   Code 3553(a).

10       As I said, there's no guarantee you will be

11  sentenced within the guideline range.  You will not be able to

12  take back your guilty plea even if the sentence is not within

13  the guideline range.

14       Do you have any questions about anything that I have

15  said so far?

16       THE DEFENDANT:  Yes.

17       THE COURT:  Do you understand everything that I have

18  said?

19       THE DEFENDANT:  Yes.

20       THE COURT:  Is there anything you do not understand?

21       THE DEFENDANT:  No.

22       THE COURT:  We do not have parole in the federal

23  system.  If you are sentenced to prison you will not be

24  released early on parole.

25       Before I ask the defendant whether he's ready to

1  plead, is there anything else the government or the defense

2  would like to put on the record or ask?

3                 MR. EDELMAN:  No, your Honor.

4                 MR. RIVERO:  No, your Honor.

5                 THE COURT:  Mr. Margulies, are you ready to plead?

6                 THE DEFENDANT:  Yes.

7                 THE COURT:  Is there any reason why Mr. Margulies

8  should not plead guilty?

9                 MR. RIVERO:  No, your Honor.

10                THE COURT:  All right.  As to counts one, five, 40

11  and 39, how do you plead?  Guilty or not guilty.

12                Sir, do you plead guilty or not guilty to these

13  charges?

14                THE DEFENDANT:  Guilty.

15                THE COURT:  Are you pleading guilty voluntarily?

16                THE DEFENDANT:  Exactly.

17                THE COURT:  Has anybody forced you or threatened you

18  to make you plead guilty?

19                THE DEFENDANT:  No.

20                THE COURT:  Other than what's in the agreement, has

21  anyone promised you anything that induced you to plead guilty?

22                THE DEFENDANT:  No.

23                THE COURT:  Has anyone promised you what your

24  sentence will be?

25                THE DEFENDANT:  No.

1              THE COURT:  All right.

2              MR. RIVERO:  Your Honor, Mr. Margulies has a

3    statement to make with regard to the plea.

4              THE COURT:  Please.

5              MR. RIVERO:  Please translate.  He asked:  May I

6    make it now?

7              THE DEFENDANT:  Judge, may I make it now?

8              THE COURT:  Of course.

9              THE DEFENDANT:  My name is Jose Natalio Margulies.

10   In the mid 70's, I helped to administer an event enterprise by

11   the name of Socram and I started buying and selling commercial

12   rights for several soccer events, including the Americas

13   Libertadores Cup.  Around 1989, I became the senior director

14   of a recently formed enterprise called Spoart.  And I also

15   assisted in the transmission of several soccer events and I

16   also formed enterprises Somerton and Valente that were

17   contracting with companies dedicated to sports marketing to

18   deliver several services.

19              Around 1986, I helped a Mr. Jose Hawilla, who was

20   the owner of Traffic, a sports marketing company, to obtain

21   the commercial rights to the Americas Cup, some of the

22   classifying games for the Olympic games and the Libertadores

23   Cup.  Starting about 1991, I helped to make bribe payments in

24   the name of Traffic to several officers of the South American

25   Soccer Federation, one of the six continental soccer

1   confederations commonly known as CONMEBOL.  I knew that these

2   officers were using their authority positions -- utilizing

3   their trust and authority positions to enrich themselves.  I

4   also knew that these bribe payments were made in order for

5   Traffic to get and retain the commercial rights for such

6   events, soccer events, as well as some games for several

7   editions for the classification in the world cup.  Although I

8   did not receive any commission for these payments, I made them

9   in order to maintain -- to keep my relationship with Traffic.

10  I did these payments in a regular fashion in the name of

11  Traffic until around 2007.

12         I also had a business relationship with Torneos y

13  Competencias, better known as Torneos.  And in the same

14  fashion as I did for Traffic, I sold some rights and helped

15  Torneos in the retransmission -- in the production of

16  retransmission of certain soccer events.  Beginning about the

17  year 2000 and until 2015 I periodically made money transfers

18  in the name and at the request of a company known as T and T.

19  T and T was originally a joint venture between Traffic and

20  Torneos and later became a joint venture between Torneos and

21  other investors which was administered by the Torneos

22  executives.  I deducted that a lot of these payments that were

23  made in the name of T and T were the bribe payments to soccer

24  officers so that they will grant contracts to Torneos or to T

25  and T.  I knew that T and T had the rights for the Libertadores

1    Cup, among other tournaments and that it was subject to the

2    support of the authorities of CONMEBOL to guarantee such

3    rights.  I also knew that Torneos got a portion of the rights

4    for a special edition of the Copa America tournament to take

5    place in the United States in 2016.  Such edition was jointly

6    organized by CONMEBOL and CONCACAF, the regional confederation

7    for North American Soccer, Central America and the Caribbean.

8    Approximately beginning in 2013, I agreed to receive a

9    commission of -- a one percent commission for certain amounts

10   that I transferred on behalf of T and T.  Before that, I had

11   not received any commission for the payments I was doing on

12   behalf of T and T, but I did all these payments and those that

13   were included in the agreement in order to maintain or to keep

14   my relationship with Torneos and its executives.

15          I used two foreign companies that I controlled,

16   Valente Corp. and Somerton Ltd., to make many of these

17   payments, the above-described payments, on behalf of Traffic

18   and Torneos and their executives.  Starting about 1986 to the

19   present time, Valente and/or Somerton -- they kept their bank

20   accounts in the United States.  When an executive from sports

21   marketing would ask that I would make some payment on behalf

22   of his company, the company will transfer electronically the

23   funds from an account outside of the U.S. to the accounts of

24   Valente or Somerton in the United States.  Valente and

25   Somerton would later make the payment or payments to the

Sealed By Order Of Court                    25

1    accounts and the quantities specified by the executive of

2    sports marketing.

3              For sometime as an executive of the communication

4    industry, FIFA, CONMEBOL and CONCACAF, and other organizations

5    related to soccer and to sports marketing companies were

6    involved in the promotion and regulation of the soccer sport

7    in all the world as part of a permanent organization.  Among

8    other things, these companies will sponsor and will have

9    events related with the sport and will do some businesses in

10   the United States and they would use financial institutions in

11   the United States.  The planning for the bribe payments were

12   not revealed to FIFA, CONCACAF or CONMEBOL.

13             I would like to add that this statement:  I am

14   remorseful for the problems I have caused for my family, the

15   world of soccer and the United States.  With my acceptance of

16   guilt, I am taking the first step to repair these problems.

17             THE COURT:  Thank you, Mr. Margulies.

18             MR. EDELMAN:  Your Honor, if I may just ask or have

19   your Honor ask some follow-up questions?

20             THE COURT:  Go ahead.

21             MR. EDELMAN:  I believe through translation the

22   defendant referred to a Americas Liberation Cup or something

23   to that effect.  I would ask that he just clarify that's

24   commonly known as the Copa de Libertadores.

25             THE DEFENDANT:  There was a tournament until 1999,

Sealed By Order Of Court                    26

1    the champion and the second will play, from each country will

2    play in South America.

3                MR. RIVERO:  May I, your Honor?

4                THE COURT:  Yes.

5                MR. RIVERO:  Mr. Margulies, is that tournament known

6    in Spanish as the Copa Libertadores?

7                THE DEFENDANT:  Americas Libertadores Cup.

8                MR. RIVERO:  Say it in Spanish for this purpose

9    because I want that on the record.

10               THE DEFENDANT:  Copa Libertadores America.

11               MR. RIVERO:  Please just translate what he said.

12               THE WITNESS:  Copa Libertadores.

13               And after 2000 when they purchased the tournament, T

14   and T, there were 38 teams that started participating --

15               MR. RIVERO:  Mr. Margulies, I'm going to ask you

16   only to answer the questions that are being asked.  This is a

17   very serious proceeding.

18               He asked the name.

19               THE DEFENDANT:  Okay.

20               THE COURT:  Thank you.

21               Any other questions?

22               MR. EDELMAN:  The only other thing I would ask your

23   Honor to clarify is that Mr. Margulies referred to making

24   certain payments in the name of Traffic or T and T, that they

25   were made on behalf of those companies through his companies,

1    not necessarily in their name, that is, Traffic or T and T.

2              THE COURT:  Do you understand the question?

3              THE DEFENDANT:  No.  I didn't understand the

4    question.

5              MR. EDELMAN:  I would ask Mr. Margulies to clarify

6    that the payments he made were not in the name of Traffic or T

7    and T.

8              THE INTERPRETER:  Interpreter needs a clarification.

9              (Pause.)

10             THE COURT:  So the clarification was whether it was

11   in the name of or for the benefit of.

12             MR. EDELMAN:  Exactly, your Honor.

13             THE COURT:  Do you understand?

14             THE INTERPRETER:  Yes.

15             THE DEFENDANT:  Following the instructions of.

16             MR. RIVERO:  He said:  For the benefit of and

17   following the instructions of.  That's actually what the

18   statement was in Spanish.

19             THE COURT:  Could you repeat your statement, please?

20             THE DEFENDANT:  I was making the payments following

21   the instructions of Traffic and T and T.

22             MR. EDELMAN:  That's fine, your Honor.

23             THE DEFENDANT:  And for some of them there is proof

24   of the orders.

25             MR. EDELMAN:  Thank you, your Honor.

1          The only other thing I would note is that the

2    government would prove venue in the Eastern District of New

3    York as to counts one, 39, and 40; venue in count five is

4    lodged in the Southern District of New York.  And I would ask

5    the defendant to waive venue as to count five and acknowledge

6    that the government can prove venue for the other counts.

7          MR. RIVERO:  We do, your Honor.  And we do

8    acknowledge that the government can do so.

9          THE COURT:  Do you understand what your lawyer said?

10         THE DEFENDANT:  Yes.

11         THE COURT:  And do you agree to waive venue for

12   count -- which is it, 40?

13         MR. EDELMAN:  Five.

14         THE COURT: -- five?

15         THE DEFENDANT:  I am accepting that everything is

16   done here.

17         MR. RIVERO:  Your Honor, I have one small point of

18   clarification.

19         THE COURT:  Yes.

20         MR. RIVERO:  I think it's also related to the

21   translation.

22         Mr. Margulies, with regard to Valente and Somerton,

23   is it a correct statement that their principal bank accounts

24   were in the United States?

25         THE DEFENDANT:  Only in the U.S.

1              MR. RIVERO:  Thank you, your Honor.

2              THE COURT:  Anything else?

3              MR. EDELMAN:  No, your Honor.

4              MR. RIVERO:  No, your Honor.

5              THE COURT:  All right.

6              Mr. Margulies, I find that you are acting

7    voluntarily, you fully understands your rights, the charges

8    against you, the rights you are giving up by pleading guilty,

9    the consequences of your guilty plea, including all the

10   possible penalties that you are facing, as well as the fact

11   that the sentence on each of counts one, five, 39 and 40 could

12   run consecutively.

13             THE DEFENDANT:  I understand.

14             THE COURT:  That you understand there's no guarantee

15   what your sentence will be or what your guideline range will

16   be, that you will not be able to take back your guilty plea if

17   the sentence is not within the guideline range and that there

18   is a factual basis for your plea in that you did commit the

19   acts alleged in counts one, five, 39 and 40.  I, therefore,

20   recommend that Judge Dearie accept your plea of guilty to each

21   of those charges.

22             THE CLERK:  Judge Dearie has set a sentencing

23   control date of June 24, 2016 at 10:00 a.m.

24             THE COURT:  Just to clarify, I also find that you

25   understand that you cannot take back your guilty plea or

1    appeal your conviction at this point once you have pled guilty

2    for all but a very, very limited set of circumstances.

3              Do you have any questions?

4              THE DEFENDANT:   No.  I just wanted to know what June

5    24 meant.

6              THE COURT:   Okay.  I understand there's a bond.

7              MR. EDELMAN:   Yes, your Honor.

8              THE COURT:   It's been agreed to by counsel?

9              MR. RIVERO:   Yes, your Honor.

10             THE COURT:   The bond is for $10 million?

11             MR. RIVERO:   Yes, your Honor.

12             THE COURT:   Mr. Margulies, you need to adhere to all

13   the conditions of the bond.  If you don't, the government

14   could come to court and ask that the bond be revoked and ask

15   that you be placed in detention as long as this case is still

16   ongoing and ask that $10 million be taken from you.  If you

17   don't have $10 million the government can take any assets,

18   savings or other property that you have or garnishee any wages

19   or other incomes that you receive until it has the full $10

20   million.

21             Do you understand?

22             THE DEFENDANT:   Yes.

23

24

25

5    Do you understand?

6    THE DEFENDANT:  Yes.

7    THE COURT:  You will not directly or indirectly

8    associate with or have contact with any codefendants or any

9    individual employed by or associated with any sports marketing

10   company identified in the indictment in this case, including

11   without limitation Torneos y Competencias, Full Play SA and

12   the Traffic Group or any subsidiary or affiliates of the

13   foregoing companies with CONCACAF and any affiliated or

14   constituent entity with CONMEBOL and any affiliated or

15   constituent entity and FIFA and any affiliated or constituent

16   entity.

17   Do you understand?

18   THE DEFENDANT:  I understand.

23   THE COURT:  You agree to post your right, title and

24   interest in the funds that are deposited in the accounts

25   listed in attachment B, subparagraphs A through E.

1          Do you see those?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And you understand and agree?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Finally, you further agree that the

6   amount forfeited to the United States from these accounts,

7   less $9,270,000 in U.S. dollars, shall be wired to the clerk

8   of the court to secure the bond.  Such amount shall be at

9   least five million U.S. dollars.

10         Do you understand?

11         THE DEFENDANT:  Yes.

12         THE COURT:  All right.  You have to come to court

13  every time you're supposed to.  If you miss any court

14  appearances --

15         THE DEFENDANT:  That's correct.

16         THE COURT:   -- you could be arrested and charged

17  with bail jumping.

18         MR. RIVERO:  Your Honor, can I see if there's any

19  question?

20         THE COURT:  Sure.

21         (Counsel confers with defendant.)

22         MR. RIVERO:  We're fine, judge.

23         THE COURT:  Obviously, you cannot commit any crimes

24  while you are on release and there are other conditions on the

25  back of the bond that you are about to sign.

1          Do you have any questions?

2          THE DEFENDANT:   No.

3          THE COURT:   All right.   I'm going to hand this down

4    for you to sign.

5          Anything else from the government?

6          MR. EDELMAN:   The government would just move to seal

7    the bond in connection with the current proceeding that's also

8    under seal.

9          MR. RIVERO:   Your Honor, we would agree and ask,

10   just to be sure, that everything is sealed.   I understand the

11   proceeding is sealed.

12         THE COURT:   Yes.   We'll make sure.

13         MR. RIVERO:   Thank you, your Honor.

14         I'm handing this back, judge.

15         THE COURT:   Thank you.

16         Okay.   The bond is now approved.

17         Do you have any questions, Mr. Margulies?

18         THE DEFENDANT:   No.

19         THE COURT:   All right.   Thank you.

20         MR. EDELMAN:   Thank you, your Honor.

21         MR. RIVERO:   Thank you, your Honor.

22                       oooooo0oooooo

23

24

25